622 A.2d 825

**Elizabeth N. WALSH**

v.

**Earl B. WALSH.**

**No. 1282, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

April 8, 1993.

Jeffrey P. Nesson, Owings Mills, for appellant.

Christopher M. Lee (Barry T. Canaras, on the brief), Baltimore, for appellee.

Argued before MOYLAN, ALPERT and BLOOM, JJ.

BLOOM, Judge.

Less than fifteen months after the Circuit Court for Baltimore County entered a judgment of absolute divorce that terminated her marriage to appellee, Earl B. Walsh, appellant, Elizabeth N. Walsh, sought a modification of that judgment with respect to its provisions for the custody of the parties' minor children and their support. In this appeal from the dismissal of her "Complaint for Modification, Custody and Other Relief," Mrs. Walsh presents us with three issues, the first of which involves a question not heretofore addressed by the Court of Appeals or this Court:

1. Whether the circuit court erred in refusing to apply § 12-202(b) of the Family Law Article of the Maryland Code (1991 Repl. Vol.) [1] (which provides that the adoption of the Child Support Guidelines set forth in subtitle 2 of Title 12 of the Family Law Article may be grounds for requesting a modification of a child support award based on a material change of circumstances if use of the guidelines would result in a change of 25% or more) "notwithstanding that the order was passed after the guidelines took effect."

2. Whether the chancellor erred in determining that continuation of the existing joint custody was in the best interests of the children.

3. Whether the chancellor abused his discretion in determining that there was insufficient evidence to support an award of attorneys fees.

Perceiving neither error nor abuse of discretion, we shall affirm the judgment of the circuit court.

---

1. Unless otherwise indicated, all statutory references in this opinion will be to the Family Law Article.

## I

The judgment of absolute divorce that terminated the parties' marriage, entered by the court on 13 June 1990, incorporated but did not merge in the judgment a marital settlement agreement dated 24 May 1990. The court awarded the parties joint custody of their two minor children but provided that the children would primarily reside with their mother, with the father having visitation privileges as set forth in the agreement. The father was ordered to pay child support of $40.50 per week per child, the amount specified by the agreement. The agreement also provided that the wife and children would continue to occupy the former marital domicile, with each party paying one-half of the monthly mortgage payments thereon, but that the house would be listed for sale as of 1 March 1991 and when it was sold the parties would share equally in the proceeds of sale.

In March 1992, desiring to keep the home rather than have it sold to a third party, Mrs. Walsh agreed to purchase her former husband's one-half interest for $32,000. She then filed her motion or complaint to modify the divorce judgment. Appellee filed a counter motion to revise the judgment, seeking, *inter alia,* a reduction in child support based upon a reduction in his income and a substantial increase in appellant's income. The case was referred to a master. Appellant contended, and the master agreed, that the $40.50 per week per child being paid by appellee as child support was more than 25% below that which he should be paying under the child support guidelines. The master also agreed with appellant's contention that the parties were in such disagreement about essential matters affecting the children that the joint custody arrangement was not in the best interests of the children. The master submitted a report recommending that child support be increased from a total of $348.30 per month to $691.66 per month; that appellant be granted sole custody of the children; that appellee be ordered to reimburse appellant for certain medi-

cal expenses; and that appellee be required to contribute $500 toward appellant's attorney's fee.

Appellee excepted to the master's report and recommendation and the exceptions were eventually heard by Judge James T. Smith, Jr., who ruled as follows:

1. The master's recommendation for an increase in child support based on the 25% rule in § 12–202(b)(2) was erroneous as a matter of law because the previous award of child support was by a judgment of divorce entered after the effective date of the law making the use of the guidelines mandatory.

2. Except for the error of law in applying the 25% rule, there was insufficient evidence of a substantial change in circumstances to warrant any change in child support.

3. There was insufficient evidence to support an award of counsel fees.

4. Although the evidence supported a finding by the master that the parties disagree as to monetary matters, those findings were insufficient to support a change from joint custody to sole custody in appellant.

The court then dismissed both the complaint and counter-complaint, assessing all costs to appellee.

## II

■ "Estoppel by judgment generally precludes the relitigation of claims and issues that have already been fully, fairly, and finally litigated between parties before a tribunal of competent jurisdiction." *Cassidy v. Board of Education*, 316 Md. 50, 56, 557 A.2d 227 (1989). Nevertheless, courts retain continuing jurisdiction over, and may from time to time amend, alter, and modify, their judgments and decrees with respect to custody of and visitation with minor children, child support, and alimony. To invoke such continuing jurisdiction and effect a change in a prior judgment, a party must present a case that, by reason of a substantial change in circumstances, is not the same as the case previously decided. With respect to child support, which is one

of the subjects of this appeal, § 12–104(a) of the Family Law Article specifically provides:

The court may modify a child support order subsequent to the filing of a motion for modification and upon showing of a material change of circumstances.

By Chapter 2 of the Laws of Maryland, 1989, the General Assembly added Subtitle 2, Child Support Guidelines, to Title 12, Child Support, of the Family Law Article. As we noted in *Gates v. Gates*, 83 Md.App. 661, 577 A.2d 382 (1990), the guidelines were advisory only and gave rise to no presumption or inference. Section 12–202(a) provided that in any proceeding to establish or modify child support, either *pendente lite* or permanent, the court may use the guidelines set forth in the subtitle. Subsection (b) of § 12–202 provided that the adoption of guidelines set forth in subtitle 2 may be grounds for requesting a modification of a child support award based on a material change in circumstances, if the use of the guidelines would result in a change in the award of 25% or more.

During the 1990 session of the General Assembly, Senate Bill No. 633, chapter 58, Laws of Maryland, 1990 was passed as emergency legislation, and became effective on 10 April 1990, the date it was signed by the Governor. The principal purpose, achieved by amended § 12–202(a), was to require, rather than merely permit, courts to use the child support guidelines and establish a rebuttable presumption that the amount of child support that would result from application of the guidelines is the correct amount of child support to be awarded. There was no change in § 12–202(b), the change of circumstances/25% provision.

Despite the fact that the use of the guidelines in the case *sub judice* would clearly result in a change of more than 25% in the amount of child support payable by appellee, the chancellor held that § 12–202(b) could not be applied to establish a material change in circumstances that would permit modification of the existing support order.

Appellant argues that whenever application of the guidelines would result in an increase of 25% or more over an existing support order, the guidelines may be grounds for requesting a modification of child support based on a material change of circumstances. The chancellor ruled that because the existing support order was issued after the *adoption* of the guidelines, the adoption of the guidelines could not effect any change in circumstances. In effect, the chancellor reasoned, § 12–202(b) was intended to serve a temporary, transitional purpose only: the guidelines would be applied to all support orders issued after they were adopted; they could only effect a change of circumstances with respect to support orders issued before the guidelines were adopted.

As Judge Adkins, writing for the Court of Appeals in *Kaczorowski v. City of Baltimore*, 309 Md. 505, 525 A.2d 628 (1987), explained, the search for legislative intent may accurately be characterized as "an effort to 'seek to discern some general purpose, aim, or policy reflected in the statute'...." In a rare instance, as in *Kaczorowski*, the plain language of the statute may be at variance with the clearly discernable purpose or goal of the legislature in enacting it. But the general rule of statutory construction is to look at the language of the statute. "If the words contained therein are plain and unambiguous, and if they express a definite and sensible meaning, then their meaning is conclusively presumed to be that intended by the legislature." *Athanason v. Athanason*, 48 Md.App. 231, 234, 426 A.2d 16 (1981). The Court of Appeals explained our task as follows:

> In determining the legislative intent, we examine the words used as the primary source for discovering that intent ... If the words are clear and unambiguous, generally speaking, the search for the legislative intent ends.

*District Land Corp. v. Washington Suburban Sanitary Commission*, 266 Md. 301, 307, 292 A.2d 695 (1972).

■ We think that the interpretation of § 12–202(b) urged by appellant defies the clear, common sense meaning of the language of the statute. The key words of § 12–

202(b) are "... the *adoption* of the Guidelines ... may be grounds for requesting a modification of child support award based on a *material change in circumstances.*" (Emphasis added). The adoption of the guidelines occurred in 1989. Their required use as establishing presumptively correct amounts to be awarded became effective 10 April 1990. Obviously, neither adoption of the guidelines for advisory purposes only nor requiring their use by the courts could affect support awards made thereafter in any *unanticipated* way. After the guidelines were adopted, and certainly after their use as establishing presumptively correct support standards was required, the courts and, presumably, the parties were aware of and familiar with the new guidelines and had an opportunity to rely on them in determining the proper amount of support to be awarded. Therefore, there should be no legitimate need to relitigate such awards unless and until one of the parties could show a material change in circumstances based on other factors.

Moreover, the fact that the statute expressly made *adoption* of the guidelines the basis for a material change in circumstances claim clearly shows an intent to restrict application of the section to pre-guideline awards that were made without benefit of the new law. It is only with respect to support orders existing at the time the guidelines were adopted that the General Assembly would have deemed that there was a need for modification to obtain the benefits of the new guidelines.

The child support award in the case *sub judice* was entered well after the guidelines were adopted and after they ceased being merely advisory and the courts were required to use them as setting presumptively correct standards for child support. At the time they entered into their marital settlement agreement and, more importantly, at the time of the judgment of divorce, both parties enjoyed an almost absolute right to demand that the court consider the guidelines in awarding child support and to vary from the guidelines only upon a finding that application of the guidelines would be unjust or inappropriate, with the court to

state on the record the reason for not applying the guidelines and how that served the best interests of the children. § 12–202(a)(ii) and (iv). The parties opted not to do so. Appellant may not now rely on a circumstance existing at the time of the award (the guidelines) as a *change* in circumstances to avoid the principles of claim and issue preclusion, i.e., *res judicata* or estoppel by judgment.

Since this case involves a support order in a judgment of divorce entered after 10 April 1990, we need not decide whether the statutory amendment that became effective on that date may be deemed to be a substantial change in circumstances if use of the guidelines would effect a change of 25% or more from a support order passed during the time the guidelines were advisory only. Our holding is that § 12–202(b) does not allow the effect of applying the guidelines to be considered a change in circumstances that would justify modifying a support order made after 10 April 1990.

The master relied entirely on the guidelines as the material change in circumstances justifying a modification of the support award. He made no finding as to any other change of circumstances. On the basis of the evidence, the chancellor's ruling that there was insufficient evidence to support a finding of a material change in circumstances (other than by application of § 12–202(b)) to justify modifying the existing support order was not clearly erroneous. Even considering appellee's agreed share of the mortgage payment on the home occupied by appellant and the children as a form of child support, as it appears the parties intended it to be, the use of the guidelines at the time of the initial award would have required appellee to pay considerably more support than he was ordered to pay. And although appellant's purchase of appellee's interest in her home released him from the obligation to contribute to the monthly mortgage payments, there was no indication that, after refinancing, appellant's monthly expenses were increased as a result of that transaction. In fact, there was no evidence before the master or proffer of evidence to the chancellor as to the amount of the mortgage payments made by

appellant after refinancing to acquire appellee's one-half interest in the property. There was evidence to the effect that the expenses of raising the children had increased slightly, but there was also evidence to the effect that appellant's income had also increased substantially (from about $31,000 to $39,000 per year, largely attributable to overtime) while appellee's income had decreased substantially (from about $33,000 to $26,500 per year) but with a substantial improvement in retirement and insurance benefits.

## II

■ Appellant argues that her evidence of the parties' inability to communicate or to cooperate was so compelling that the trial court's denial of her request to alter the previously agreed upon custodial arrangement can only be viewed as an abuse of discretion. In *McCready v. McCready*, 323 Md. 476, 481, 593 A.2d 1128 (1991), the Court of Appeals held that the standard to be employed in determining a contested custody case is the best interest of the child. Ordinarily the party seeking a change in custody must demonstrate a change in circumstances sufficient to justify relitigation of the issue. Once the threshold change is shown, the court applies the best interest standard in deciding whether alteration of the custodial arrangement would be appropriate. *Id.* at 481–82, 593 A.2d 1128.

■ Our review of the lower court's decision with respect to custody is quite narrow. The underlying factual findings will only be set aside if clearly erroneous, and the custody decision itself will not be disturbed except upon a clear showing of abuse of discretion. *Id.* In the case *sub judice* the master concluded, after hearing appellant testify, that the parties could not agree on anything. After reviewing the evidence, the chancellor found that almost all of the disagreements complained of by appellant concerned either financial matters, visitation, or differences that were already existing when the parties agreed to joint custody.

There were no disagreements about fundamental matters such as the children's health or education. Many of the disputes (for instance, appellee's responsibility for medical expenses) were resolved, at least temporarily, by the court's ruling. The remaining points of disagreement concerned matters that would not be resolved by a change of custody from joint to sole, and the court saw no benefit to the children in changing the custodial arrangements on the basis of such disagreements. Whether custody continues to be shared by the parties or one of them were to be awarded sole custody, their inability to agree on monetary matters would most likely continue. There is no reason to believe that giving Mrs. Walsh sole custody would rectify or eliminate the parties' disagreements. Since there had never been any disagreement about the children's health or education, the court did not abuse its discretion in concluding that whatever incremental benefits might be gained in awarding appellant sole custody would not justify the potential disruption and destabilization of the children caused by eliminating joint custody.

## III

█ Appellant's third contention on this appeal is that the trial court erred in denying her request for reasonable counsel fees. Normally the decision to award counsel fees lies within the sound discretion of the trial court. *Baer v. Baer*, 252 Md. 586, 588, 250 A.2d 897 (1969). The trial court's denial of attorney's fees will not be disturbed absent abuse of discretion. *Id.*

█ We can find no abuse of discretion on the facts of the case *sub judice.* Section 12–103 of the Family Law Article sets forth specific factors the trial court must consider in deciding whether to award attorney's fees:

(b) *Required considerations.*—Before a court may award costs and counsel fees under this section, the court shall consider:

(1) the financial status of each party;

(2) the needs of each party;  and

(3) whether there was substantial justification for bringing or defending the proceeding.

Although there was clearly substantial justification for appellant's suit for modification of child support, the parties' relative financial positions militate against an award of fees.   At the time of the court's decision, Mrs. Walsh earned more money than her ex-husband did.   Under these circumstances, the court could reasonably conclude that she was better able than he to pay her counsel fees and, therefore, both parties should pay their own counsel fees.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.