635 A.2d 1340

**Elizabeth WALSH**

v.

**Earl WALSH.**

**No. 67, Sept. Term, 1993.**

Court of Appeals of Maryland.

Jan. 27, 1994.

Jeffrey P. Nesson, Reisterstown, for petitioner.

Christopher M. Lee (Barry T. Canaras, Kodenski & Canaras, on brief) Baltimore, for respondent.

Argued before RODOWSKY, McAULIFFE,* CHASANOW, KARWACKI and ROBERT M. BELL, JJ., and MARVIN H. SMITH and CHARLES E. ORTH, Jr., Judges (retired), Specially Assigned.

CHASANOW, Judge.

The parties to this litigation, Elizabeth Walsh (Elizabeth) and Earl Walsh (Earl), were married in 1975. Two children were born of the marriage. In 1988, Elizabeth and Earl voluntarily separated and, approximately two years later on June 13, 1990, they were divorced in the Circuit Court for Baltimore County. A property settlement agreement dated May 24, 1990 was "approved and made part of and incorporated in said Judgment, but not merged therein...." The property settlement agreement provided in pertinent part that the parties would have joint custody of their two minor children, although the children would reside primarily with Elizabeth. Earl was to pay child support in the amount of $40.50 per week, per child. Elizabeth was to have the use and possession of the family home, and Earl was also to pay $334.50 per month, which was one-half of the total monthly mortgage payment of $669.00. The parties also agreed to list their family home for sale as of March 1, 1991, and evenly divide the net proceeds of the sale.

Approximately fifteen months after the divorce, on September 5, 1991, Elizabeth filed a "Complaint for Modification of Custody, Child Support and Other Relief." In that complaint, she asked for an increase in child support alleging that, pursuant to the child support guidelines, she would be entitled to an increase greater than twenty-five percent of the amount of support provided for in the separation agreement, which was incorporated into the judgment of divorce. Earl filed an answer, as well as a "Counter Complaint for Modification of

---

* McAuliffe, J. now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, § 3A, he also participated in the decision and adoption of this opinion.

Child Support." In his counter complaint, Earl alleged that, since the divorce, the financial circumstances of the parties had changed, and Earl was earning almost twenty-five percent less than he was earning at the time of the support agreement, while Elizabeth was earning substantially more than she was earning at the time of the separation agreement. Based on these changed circumstances, Earl requested a reduction of child support.

On March 9, 1992, a hearing was held before a Domestic Relations Master on Elizabeth's complaint for modification and Earl's counter complaint. At the hearing, it was established that, since the divorce, Elizabeth had a significant increase in salary due, in part, to working overtime, whereas Earl had a significant decrease in salary due to a job change. There was also testimony that shortly before the hearing the parties had signed an agreement that, in lieu of selling the marital home, Elizabeth was to purchase Earl's interest in the home. According to the agreement, Elizabeth would refinance the home to secure the funds to pay Earl. Settlement on the transfer agreement was scheduled the following week and, as a consequence, Earl's obligation to pay one-half of the mortgage would cease.

Following the hearing, the Domestic Relations Master made several factual findings and rendered an oral opinion. The findings that are relevant to the instant case were that, in spite of the fact that Elizabeth's salary had gone up and that Earl's salary had been reduced, Elizabeth is entitled to $691.66 per month in child support based on the Master's calculation of Earl's support obligation under the child support guidelines. This increase doubled what Earl was paying as child support pursuant to the agreement, although the increase was only slightly more than the mortgage contribution he had been making. Before this Court, Earl does not dispute the Master's factual findings and guidelines calculation, but he does contend that there was no change in circumstances which would permit the court to increase his child support payments.

The basis for the Master's finding of a change in circumstances was his view that Maryland Code (1984, 1991 Repl. Vol.), Family Law Article (hereinafter FL), § 12–202(b) was applicable, and his view of that section that, "if there is more than 25 percent between the guidelines and what the current obligation is, there's a change" in circumstances.

The Master made no express finding whether the termination of Earl's obligation to pay one-half of the mortgage constituted a "material change of circumstance" under FL 12–104(a), although in his oral opinion, the Master noted that the change in Earl's obligation to pay one-half of the mortgage was "generated and already into the works...." The Master further noted that Earl's contribution toward the mortgage was "part of a normal child support [award] that would normally be paid for living arrangements or something of that nature," and that obligation was terminating the following week.

Earl filed exceptions to the Master's report and recommendations, and a hearing was held in the Circuit Court for Baltimore County. The circuit court sustained all of Earl's exceptions. The circuit court's findings that are relevant to the issue before this Court are as follows:

"1) That the Master erred as a matter of law in increasing child support based upon the Twenty-five Percent Rule contained in Family Law Article, Sec. 12–202(b)(2) as the child support previously established was pursuant to a Judgment of Divorce dated June 13, 1990, which Judgment was entered subsequent to the effective date of the child support guidelines; and

2) That, excepting the error of law in applying the Twenty-five Percent Rule, there was insufficient evidence of a substantial change in circumstances to warrant any change in child support to be paid by the Defendant to the Plaintiff...."

Elizabeth appealed to the Court of Special Appeals. The intermediate appellate court affirmed the judgment of the circuit court. *Walsh v. Walsh,* 95 Md.App. 710, 622 A.2d 825

(1993). This Court granted Elizabeth's petition for certiorari to consider three questions:

"Was the Court of Special Appeals correct in interpreting that FL 12–202(b) did not apply to orders entered after April 10, 1990?

Was the Court of Special Appeals correct in determining that there was insufficient evidence of a material change in circumstances to award child support according to the guidelines?

Should the matter be remanded to the Circuit Court for the taking of additional evidence on the issue of substantial change in circumstances?"

## I. FL 12–202(b)

The Domestic Relations Master found that there was a change in circumstances since the June 13, 1990 order by relying on FL 12–202(b) and determining that application of the child support guidelines would increase Earl's child support payments more than twenty-five percent above the June, 1990, court-ordered support. The circuit court judge and the Court of Special Appeals held that the Master erred and that FL 12–202(b) is not applicable to a child support order entered after April 10, 1990, which was the date when the legislature made the child support guidelines presumptively applicable. We agree. FL 12–202(b) is a transitional statute enacted as a bridge between pre-guidelines child support orders and post-guidelines child support determinations. The circuit court judge and the Court of Special Appeals also found that there was insufficient evidence upon which the Master could have found a material change of circumstances under FL 12–104. We disagree.

In order to seek a modification of a prior child support order, a party must show a change in circumstances under either FL 12–104 or FL 12–202. This is a threshold requirement for any modification of any final order for child support. FL 12–104 requires "a material change of circumstance." It provides the following:

"(a) *Prerequisites.*—The court may modify a child support award subsequent to the filing of a motion for modification and upon a showing of a material change of circumstance."

Where use of the guidelines would increase a pre-guidelines award by twenty-five percent or more, FL 12–202 permits a finding of a change in circumstances. FL 12–202(b) provides:

"*Modification of orders.*—(1) Subject to the provisions of paragraph (2) of this subsection, the adoption of the guidelines set forth in this subtitle may be grounds for requesting a modification of a child support award based on a material change in circumstances.

(2) The adoption of the guidelines set forth in this subtitle may not be grounds for requesting a modification of a child support award based on a material change in circumstances unless the use of the guidelines would result in a change in the award of 25% or more."

In 1989, the legislature adopted advisory child support guidelines by adding Subtitle 2 to Title 12 of the Family Law Article. *See* Chapter 2 of the Acts of 1989. Part of that legislation was FL 12–202(b). During the 1990 session, by emergency legislation effective April 10, 1990, FL 12–202(a) was amended to *require,* rather than merely *permit,* courts to use the child support guidelines. *See* Ch. 58 of the Acts of 1990. The statute created a rebuttable presumption that the guidelines are correct and applicable unless such application would be unjust or inappropriate in a particular case. *Id.;* FL 12–202(a). No change was made to FL 12–202(b).

Elizabeth contends that there was a change in circumstances under FL 12–202(b) because she alleged, and the Master found, more than a twenty-five percent difference between the support order and the guidelines amount. Earl disagrees and contends that FL 12–202(b) does not apply because the section is only applicable to modifications of pre-guidelines support orders. He finds support in the legislature's use of the word "adoption." FL 12–202(b)(2) provides the following:

"The *adoption* of the guidelines set forth in this subtitle may not be grounds for requesting a modification of a child support award based on a material change in circumstances unless the use of the guidelines would result in a change in the award of 25% percent or more." (Emphasis added). The circuit court agreed with Earl and held that the June, 1990 order was issued after the "adoption" of the guidelines. Therefore, FL 12–202(b) was not applicable. The Court of Special Appeals agreed and Judge Bloom, writing for the court, stated the following:

"The key words of § 12–202(b) are '... the *adoption* of the Guidelines ... may be grounds for requesting a modification of [a] child support award based on a *material change in circumstances.*' (Emphasis added). The adoption of the guidelines occurred in 1989. Their required use as establishing presumptively correct amounts to be awarded became effective 10 April 1990. Obviously, neither adoption of the guidelines for advisory purposes only nor requiring their use by the courts could affect support awards made thereafter in any *unanticipated* way. After the guidelines were adopted, and certainly after their use as establishing presumptively correct support standards was required, the courts and, presumably, the parties were aware of and familiar with the new guidelines and had an opportunity to rely on them in determining the proper amount of support to be awarded. Therefore, there should be no legitimate need to relitigate such awards unless and until one of the parties could show a material change in circumstances based on other factors.

Moreover, the fact that the statute expressly made *adoption* of the guidelines the basis for a material change in circumstances claim clearly shows an intent to restrict application of the section to pre-guideline awards that were made without benefit of the new law. It is only with respect to support orders existing at the time the guidelines were adopted that the General Assembly would have deemed that there was a need for modification to obtain the benefits of the new guidelines."

*Walsh,* 95 Md.App. at 716–17, 622 A.2d at 828–29. We agree with the Court of Special Appeals. FL 12–202(b)· was intended as a transitional statute clarifying when the child support guidelines are applicable to pre-guidelines orders. It would be inequitable to Earl to construe the statute otherwise. Elizabeth, with full knowledge of the presumptive child support guidelines, agreed to child support below the guidelines. Her agreement was approved by the court and incorporated into its decree. She should not be permitted to freely repudiate her agreement and the decree incorporating that agreement and now have the child support recalculated based on the guidelines unless there is a "material change of circumstance" under FL 12–104 since the decree.

## II. FL 12–104

The circuit court and the Court of Special Appeals held that, although the Domestic Relations Master never reached the issue of whether there was a material change of circumstances under FL 12–104, as a matter of law, there was insufficient evidence to support any such finding. We disagree.

Before discussing the evidence that could have supported a finding of material change of circumstances, we expressly reject Elizabeth's alternative argument that the Domestic Relations Master implicitly made a finding of material change of circumstances and her reliance on *Voishan v. Palma,* 327 Md. 318, 609 A.2d 319 (1992).

*Voishan* involved a case where the parties' gross income exceeded the guidelines so that there were no applicable child support guidelines. On appeal, the husband contended that the trial judge's decision to double the support for the minor child was improper because the court had made no express finding of a material change of circumstances. *See* FL 12–104(a). There was evidence of income and expenses at the time of the pre-guidelines order, which was over five years before the hearing, and of the current income and expenses. Both parties acknowledged before the trial judge that some modification might be in order, and since there were no

directly applicable child support guidelines, the only basis asserted for any modification was a material change of circumstances under FL 12–104. We concluded from the record that it was apparent Judge Thieme implicitly made a finding that a change of circumstances had been shown. *Voishan*, 327 Md. at 324–25, 609 A.2d at 322. In the instant case, the Domestic Relations Master looked only to FL 12–202(b) and neither explicitly nor implicitly found a material change of circumstances under FL 12–104.

In determining if there is a material change of circumstances, a court must first look to the circumstances at the time of the original support order. FL 12–202(a)(2)(iv), which was in effect at the time of the June, 1990 order, provides that a trial court need not apply the guidelines if they would be "unjust or inappropriate in a particular case," but the court must state, in writing or on the record, the reasons for departing from the guidelines. A permissible inference in the instant case could be that the parties in their agreement and/or the judge who signed the divorce decree considered the full amount of support called for by the guidelines unjust or inappropriate in light of 12–202(a)(2)(iii) and Earl's obligation to pay one-half of the mortgage on the home where the children were primarily residing.

FL 12–202(a)(2)(iii) specifically states:

"In determining whether the application of the guidelines would be unjust or inappropriate in a particular case, the court may consider:

1. the terms of any existing separation or property settlement agreement or court order, including any provisions for payment of mortgages ... [and] the terms of any use and possession order or right to occupy to the family home under an agreement...."

Further, FL 12–204(j) provides:

"*Use, possession or occupancy of family home.*—(1) Upon the expiration of a use and possession order or the expiration of the right to occupy the family home under a separa-

tion or property settlement agreement and upon motion of either party, the court shall review the child support award.

(2) If the allocation of financial responsibility for the family home was a factor in departing from the guidelines under subsection (a) of this section, the court may modify the child support, if appropriate in all the circumstances, upon the expiration of the use and possession order or the expiration of the right to occupy the family home under a separation or property settlement agreement."

The 1990 order which Elizabeth seeks to modify was based on the agreement of the parties. The amount specifically designated as child support was apparently below the amount called for by the child support guidelines. Even after Earl's salary went down and Elizabeth's salary went up, Earl's support obligation under the agreement was apparently much less than the guidelines support calculated by the Master. The record does not contain the reasons why the judge who issued the divorce decree and support order went below the child support guidelines, but it is reasonable to assume that a significant factor was Elizabeth's use of the family home coupled with Earl's agreement to pay one-half of the mortgage. Earl's mortgage payments were a form of income to Elizabeth and the children, as well as a deduction from Earl's available resources. Thus, Earl's obligation to pay one-half of the mortgage payments may have been a reason for ordering support below the guidelines. If so, when that obligation ceased, there could be a change of circumstances. Whether that change was material will have to be determined on remand. Only part of Earl's mortgage payments directly benefited the children; part of the payments benefited Elizabeth and part of the payments directly benefited Earl by increasing the equity in the house. We have no indication from the judge who signed the divorce decree of the extent to which that expenditure resulted in a decrease in child support because of the decrease in Earl's resources which otherwise would have been applied toward child support. There is also no indication in the record of what Elizabeth's payments will be under the mortgage which is being refinanced to pay off

Earl's interest in the home. For all of these reasons, a remand is necessary to determine whether, based on the current circumstances including the cessation of Earl's mortgage payments, there was a substantial change of circumstances and, if so, giving due regard to the entire circumstances including the parties' agreement and their change in income, what amount of child support should be ordered.[1]

For the guidance of the court below in determining on remand whether there has been a material change of circumstances by virtue of Earl's cessation of the mortgage contribution, the court must first determine whether the agreement to pay one-half of the mortgage was in some manner a form of child support or was unrelated to child support. If the June, 1990 order provided for child support substantially below the guidelines, it may be assumed, absent evidence to the contrary, that the downward departure from the child support guidelines was based on Earl's obligation to pay one-half of the mortgage. As to whether there would be a material change, although FL 12-202(b) is not directly applicable, it may provide helpful insight into legislative intent. A twenty-five percent change in a support obligation is not a mandatory threshold under FL 12-104, but that twenty-five percent figure may give some guidance in determining what the legislature intended when it required a "material" change under FL 12-104.

We also point out for the bench and the bar that, while parties are encouraged to settle domestic disputes, when doing so, they must be mindful of the needs of their children. When a judge approves and incorporates an agreement of the

---

1. Although our holding is somewhat more narrow, we note that some courts have held that where a divorced spouse ceases making voluntary mortgage payments on the family home where the other spouse and children are residing and where the voluntary mortgage payments were being made at the time a support order was entered, the cessation of the voluntary payments can be a change of circumstances justifying an increase in the child support order. *See Carlton v. Carlton,* 4 Utah 2d 332, 294 P.2d 316 (1956); *Commonwealth ex rel. Zehring v. Zehring,* 186 Pa.Super. 393, 142 A.2d 397 (1958).

parents into an order of support, the judge must do more than merely rubber stamp anything to which the parents agree. Judges have an obligation to assure that children do not suffer because of any disparate bargaining power of their parents. Even before the guidelines, this Court made it clear that agreements between the parents were not binding on a court ordering child support. *See Stancil v. Stancil,* 286 Md. 530, 535, 408 A.2d 1030, 1033 (1979) ("[T]he Chancellor cannot be handcuffed in the exercise of his duty to act in the best interests of a child by any understanding between parents."). *See also Stambaugh v. Child Support Admin.,* 323 Md. 106, 111, 591 A.2d 501, 504 (1991) ("Generally, the duty to support one's minor children may not be bargained away or waived."); *Shrivastava v. Mates,* 93 Md.App. 320, 327, 612 A.2d 313, 317 (1992) ("The law and policy of this State is that the child's best interest is of paramount importance and cannot be altered by the parties."); *Rand v. Rand,* 40 Md.App. 550, 554, 392 A.2d 1149, 1152 (1978) ("The fixing of child support derives from the obligation of the parent to the child, not from one parent to another."). In reviewing support agreements, judges should refer to the child support guidelines, and when approving and incorporating into a court order an agreement containing a downward deviation from the guidelines, the record should reflect the reasons why the judge adopted such an agreement. FL 12–202(a)(2)(iv) specifies:

"1. If the court determines that the application of the guidelines would be unjust or inappropriate in a particular case, the court shall make a written finding or specific finding on the record stating the reasons for departing from the guidelines.

2. The court's finding shall state:

A. the amount of child support that would have been required under the guidelines;

B. how the order varies from the guidelines;

C. how the finding serves the best interests of the child; and

> D. in cases in which items of value are conveyed instead of a portion of the support presumed under the guidelines, the estimated value of the items conveyed."

There is no exception in the statute for child support orders which are based on agreements of the parents. Had the judge who signed the June 13, 1990 order of support indicated for the record whether the child support ordered was below the guidelines and, if so, whether Earl's contribution to the mortgage payments made application of the guidelines unjust or inappropriate, then there probably would have been no need for this extensive and expensive litigation. We would also suggest that where one parent, as part of an agreement, agrees to pay, for a period of time, something that would ordinarily be part of the other parent's expenditures for child support, the parties should make clear their intentions upon expiration of that payment obligation. When such a payment obligation is part of an agreement which also provides for support below the guidelines, it is reasonable to assume that the payment is intended to be a form of child support. The evidence presented at the hearing before the Domestic Relations Master could justify a finding that some or all of Earl's payments of one-half of the mortgage were a form of child support and were a basis for the downward departure from the child support guidelines in the June, 1990 court order. If cessation of Earl's mortgage payments is found to be a material change of circumstances under FL 12–104, there will also have to be a determination of any offsetting effect of the parties' salary changes.

For these reasons, the matter is remanded to the court below for further proceedings.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AND TO REMAND THE CASE TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS*

*OPINION. RESPONDENT TO PAY THE COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS.*

McAULIFFE, J., concurs in the result only.