*1331
 
 OPINION
 

 Per Curiam:
 

 In this appeal, appellant contends that the district court erred when it applied social security disability benefits to offset child support arrearages. The social security disability benefits were paid to the child because of the respondent father’s disability. The child support arrearages at issue accrued prior to the time that the child began receiving those benefits. We reverse the order of the district court and remand for the district court to determine whether, and to what extent, respondent is entitled to a credit.
 

 FACTS
 

 Appellant Julie Hern and respondent Elliott Erhardt were married in Las Vegas in July 1981. The couple had a child, Ethan, in February 1983. In December 1988, a stipulation was filed and the district court entered an order granting Julie temporary custody of Ethan and ordering Elliott to pay Julie $150.00 per month as child support. In February 1989, Julie and Elliott divorced. Under the divorce decree, Julie was awarded custody of Ethan, subject to Elliott’s reasonable visitation, and Elliott was ordered to pay $150.00 per month as child support. Elliott did not make any monthly child support payments pursuant to the divorce decree. In 1990, Julie and Ethan moved to Sacramento, California with Julie’s new husband.
 

 In either 1989 or 1991, Elliott became disabled and began receiving social security disability benefits. In September 1991, Julie filed a petition in Sacramento Superior Court under the Uniform Reciprocal Enforcement of Support Act (URESA), which alleges that child support arrearages from February 1989, the date the divorce decree was entered, until June 1991 amounted to $4,350.00. In June 1992, because of Elliott’s disability, Julie began receiving social security disability benefits as
 
 *1332
 
 Ethan’s representative payee.
 
 [1]
 
 The first check included a lump sum payment which encompassed benefits from June 1991.
 

 In April 1994, a URESA Master’s report and order was entered in district court in Clark County, Nevada, which provided that Elliott owed $8,169.00 in child support arrearages (which included the $4,350.00 for child support due between February 1989 and June 1991) and ordered him to pay $50.00 per month on that sum. The record also contains a July 22, 1994 letter to Elliott from a Cody, Wyoming social security office. The letter indicates that Elliott’s social security disability provided Julie, as Ethan’s representative payee, with the following benefits: $8,457.00 in 1992; $5,580.00 in 1993; and $477.00 per month in 1994. The letter also provides, “Entitlement 05/91. Paid to mother.” Thus, it appears that Ethan’s entitlement to disability benefits began in May 1991.
 

 On October 4, 1994, Elliott filed, in district court in Clark County, Nevada, a motion for a change of primary physical custody or in the alternative specified visitation, and a motion to clarify support arrears. Elliott argued that he was not in arrears in child support because the social security disability benefits Julie received for Ethan since May 1991 exceeded the total amount he owed for child support. Elliott also argued that Julie disappeared with Ethan directly after the divorce decree was entered without leaving Elliott a forwarding address or telephone number, and that Julie had fraudulently obtained welfare benefits in California.
 

 Julie filed an opposition and a countermotion to transfer jurisdiction to California. Julie stated that she moved to California one year after the divorce, enrolled the Nevada divorce decree in California as a foreign judgment, and initiated proceedings to collect child support arrearages.
 
 [2]
 
 Julie contended that the district court should dismiss Elliott’s motion and defer to the California court’s jurisdiction, and that she should retain primary physical custody of Ethan. Julie also requested that child support arrear-ages be reduced to judgment.
 

 Elliott opposed Julie’s countermotion to transfer jurisdiction to California and contended that he owed no child support arrear-ages. He argued that he became disabled in 1987, began receiving social security disability benefits in 1989, and owed no
 
 *1333
 
 arrearages because social security disability benefits were paid to Julie as Ethan’s representative payee.
 

 On December 1, 1994, at the hearing on Elliott’s motions and Julie’s countermotion, Elliott withdrew his motion for change of primary physical custody. The district court decided that it had jurisdiction to consider the matter, and stated that social security disability benefits could be applied to pay child support arrear-ages. The district court ordered counsel for the parties to establish a visitation schedule and ordered Elliott to suspend payments towards arrearages.
 

 On February 1, 1995, a status hearing was held. In an order filed June 29, 1995, the district court found that Julie received the following amounts in social security disability benefits as Ethan’s representative payee: $8,457.00 in 1992 (including a lump sum payment which included benefits from July 1991); $5,580.00 in 1993; and $5,724.00 in 1994. The district court also found that child support arrearages reduced to judgment through URESA totaled $8,169.00 (which included $4,350.00 in child support arrearages which accrued between 1989 and 1991). The district court concluded that for 1992, 1993 and 1994, Julie received for Ethan’s benefit $10,237.00 in excess of Elliott’s child support obligation. The district court subtracted the amount of child support arrearages owed from 1989 through 1991 from the amount paid in social security disability benefits, concluding that Julie was overpaid by $6,087.00.
 
 [3]
 

 The district court concluded that to award Julie arrearages in addition to the social security disability benefits would constitute “double enrichment,” which, according to the court, was contrary to fairness and equity. The district court recognized Julie’s argument that the social security disability benefits should not be used to offset child support payments and arrearages because Julie was required to pay taxes on those benefits. Nonetheless, the district court concluded that Elliott was no longer obligated to pay any child support because the social security disability benefits exceeded the amount Elliott owed as child support. The district court further concluded that if social security disability
 
 *1334
 
 benefits were stopped, the parties should return to court. Finally, the district court concluded that Julie had obstructed Elliott’s right to visitation with Ethan.
 

 The district court awarded Elliott $677.50 in attorney fees, from which was already deducted $72.50 that Elliott owed Julie for half of the cost of an airline ticket for Ethan’s visitation. Julie appealed.
 
 [4]
 

 DISCUSSION
 

 Child support arrearages
 

 Julie contends that Elliott owes $4,350.00 for unpaid child support from February 1989, the date Julie and Elliott were divorced, until May or June 1991, when Julie began receiving social security disability benefits as Ethan’s representative payee. Julie argues that the amount of social security disability benefits which exceeds the amount of child support may not be credited against Elliott’s support obligation which accrued prior to the time that Julie began receiving benefits as Ethan’s representative payee. In other words, Julie argues that Elliott’s child support arrearages amounted to $4,350.00 prior to the time that she began to receive social security disability benefits on Ethan’s behalf, and that the district court erred in crediting those benefits against this $4,350.00 in child support arrearages.
 
 [5]
 

 Whether the excess of the amount paid in social security disability benefits over the amount owed as child support may be credited towards child support arrearages is an issue of first impression in Nevada. This court has previously discussed whether social security benefits may be applied to pay child support, but we did not decide the issue because it was not squarely before us.
 
 See
 
 Bailey v. Bailey, 86 Nev. 483, 471 P.2d
 
 *1335
 
 220 (1970); Heppner v. McCombs, 82 Nev. 86, 411 P.2d 123 (1966).
 
 [6]
 

 We conclude that the excess of the amount paid in social security disability benefits over the amount owed as child support may be credited towards child support arrearages, with certain limitations. The critical time period with respect to applying social security disability benefits as a credit against child support arrearages is when the parent under a support obligation becomes disabled, not, as Julie contends, when the dependent child begins receiving social security disability benefits. The parent under the support obligation is entitled to a credit against an arrearage which
 
 arises
 
 after the parent becomes disabled and because of a lapse in time between the onset of the disability and the date on which social security benefits are paid for the child. Of course, the parent under the support obligation must make a good faith effort to apply for benefits for the child as soon as possible after the disabling injury. In a case where the district court concludes that the parent did not make such an effort, the court should not credit the arrearages attributable to that delay. Where a credit is allowed, the amount of the credit is calculated by subtracting the amount of child support owed during the period of disability from the amount of social security disability benefits the dependent child receives.
 
 See
 
 Newman v. Newman, 451 N.W.2d 843, 845 (Iowa 1990) (where arrearage in child support occurs because of the time lag between the onset of the disability of the obligor parent and the beginning of social security disability benefits to the children, the disabled parent should be allowed a credit toward the arrearage based on the assumption that the nonpayment resulted from the disability); Potts v. Potts, 240 N.W.2d 680, 682 (Iowa 1976) (excess of social security disability benefits
 
 *1336
 
 credited against arrearage occurring between the time of the disabling injury and the time benefits began); McCloud v. McCloud, 544 So. 2d 764, 767 (La. Ct. App. 1989) (disabled former husband allowed credit against child support arrearages for social security benefits received by former wife on behalf of the minor child because of father’s disability); Frens v. Frens, 478 N.W.2d 750, 751 (Mich. Ct. App. 1991) (lump-sum payment of social security disability benefits credited toward arrear-age in child support payments which accumulated after the disability); Potter v. Potter, 404 A.2d 352, 356 (N.J. Super. 1979) (lump-sum social security disability benefits satisfied father’s outstanding child support obligation because father was unable to work due to the disability during the period for which the child support obligation accrued).
 

 Thus, Elliott may be entitled to have the excess of the social security disability benefits applied to an arrearage which accrued after the onset of his disability. The excess of social security disability benefits may not, however, be applied to compensate for arrearages which accrued prior to the onset of the disability or after its termination.
 
 See Potts,
 
 240 N.W.2d at 682 (no credit may be given after the disability ends);
 
 Frens,
 
 478 N.W.2d at 751 (no credit for arrearages accumulating after the divorce and prior to the disabling injury); Children & Youth Services v. Chorgo, 491 A.2d 1374, 1379 (Pa. Super. Ct. 1985) (when support payments are not made prior to the start of the disability, any excess in the benefits over the amount needed for current support cannot be applied to arrearages).
 

 In the instant case, the district court did not make a finding of fact with respect to the date that Elliott became disabled. There is evidence in the record that Elliott was disabled in 1987 or 1989. Elliott stated in his reply to Julie’s opposition to his motion for a change of custody and to clarify support arrears that he was disabled in 1987. If Elliott was disabled in 1987, then all of the arrearages accrued after the onset of Elliott’s disability. However, Elliott argued before the district court and Julie acknowledges in her opening brief on appeal that Elliott received approximately $700.00 per month in social security disability benefits beginning in 1989. If Elliott was disabled in 1989, then, some, if not all of the arrearages accrued after the onset of Elliott’s disability.
 

 If Elliott became disabled in 1991, then child support arrear-ages which accrued between February 1989, the date the divorce decree was entered, and the time that Elliott became disabled in 1991 accrued prior to the onset of the disability. If this is the case, then the district court erred in crediting the excess of the
 
 *1337
 
 social security disability benefits Julie received for Ethan to these arrearages. On remand, the district court shall determine the date of Elliott’s disability in order to determine whether, and to what extent, Elliott is entitled to a credit against the child support arrearages.
 

 Visitation
 

 Julie contends that the district court’s order regarding visitation, that Ethan be with Elliott from June 16 each year through the remainder of summer vacation, was excessive. As support, Julie cites Schwartz v. Schwartz, 107 Nev. 378, 812 P.2d 1268 (1991), for the proposition that a one-month visitation period is sufficient to maintain the bond between the child and the noncustodial parent.
 

 Schwartz,
 
 however, does not stand for the proposition that a one-month period is sufficient for visitation. In
 
 Schwartz,
 
 this court affirmed a decree which limited a mother’s visitation to one month where the mother had been hospitalized for depression, attempted suicide, and coached the couple’s son into making false accusations against the father and another person that they sexually abused him. This court recognized that a one-month period may be insufficient and could be expanded:
 

 Although a one-month summer visitation period is less than the period requested by [the mother], prospects exist for expanding the visitation if the current schedule remains free of recurrent maternal misconduct and proves beneficial to the children.
 

 Id.
 
 at 386, 812 P.2d at 1273. Moreover, with respect to visitation, each case must be decided according to its unique circumstances. Here, we conclude that the district court’s order concerning Elliott’s visitation was not excessive.
 
 [7]
 

 
 *1338
 

 Attorney fees
 

 Last, Julie contends that the district court erroneously awarded $677.50 in attorney fees to Elliott. Julie argues that because the district court erred on the issues of whether she was entitled to arrearages and whether she obstructed Elliott’s right to visitation, the fee award should be reversed on appeal. Julie cites no authority in support of her contention.
 

 The award of attorney fees in divorce proceedings lies within the sound discretion of the district court.
 
 See
 
 Sprenger v. Sprenger, 110 Nev. 855, 861, 878 P.2d 284, 288 (1994) (citing
 
 Schwartz,
 
 107 Nev. at 386, 812 P.2d at 1273). It appears that the district court based its award of attorney fees to Elliott on the ground that Elliott did not owe Julie any child support arrearages, and was therefore the prevailing party.
 
 See
 
 NRS 18.020. Because we believe that the district court may have applied the excess of social security disability benefits towards child support arrearages which accrued prior to the commencement of Elliott’s disability, we reverse that part of the district court’s order awarding attorney fees. On remand, based on the date of Elliott’s disability, the district court may determine whether Elliott is entitled to an award of attorney fees.
 

 CONCLUSION
 

 For the reasons stated above, we reverse the order of the district court and remand this matter for proceedings consistent with this opinion.
 
 [8]
 

 [1]
 

 Ethan has his own entitlement to social security benefits because Elliott is disabled and receives social security disability benefits.
 
 See
 
 42 U.S.C. § 402(d)(1)(1994).
 

 [2]
 

 On September 22, 1994, the Nevada divorce decree was domesticated in California. The Sacramento County Superior Court entered judgment in favor of Julie in the amount of $13,250.00.
 

 [3]
 

 We are uncertain how the district court calculated that Julie received for Ethan’s benefit $10,237.00 in excess of Elliott’s child support obligation, and that Julie was overpaid by $6,087.00. According to the figures the district court used to determine the amount that Julie received in disability benefits for Ethan, Julie received a total of $19,761.00. Subtracting the amount of arrearages reduced to judgment through URESA ($8,169.00) from the amount of disability benefits received between 1992 through 1994 ($19,761.00), we arrive at $11,592.00. The discrepancy between our calculations and those of the district court may be because the district court did not include all social security disability benefits, or included additional arrear-ages.
 

 [4]
 

 The district court’s June 29, 1995 order provides, “IT IS FURTHER ORDERED that this Court grants a 54(b) Judgment at the request of Plaintiff’s counsel so that the matter may be appealed to the Supreme Court.” This purported NRCP 54(b) certification is improper because the district court did not make an express determination that there was no just cause for delay.
 
 See
 
 Aldabe v. Evans, 83 Nev. 135, 425 P.2d 598 (1967). However, this court has jurisdiction to review the order of the district court pursuant to NRAP 3A(b).
 
 See
 
 Burton v. Burton, 99 Nev. 698, 669 P.2d 703 (1983) (special order after final judgment).
 

 [5]
 

 After Julie filed her opening brief on appeal, this court ordered that Elliott should be represented by counsel and extended the filing deadlines for briefing to give Elliott time to retain counsel and file an answering brief. In response to our order, we received a letter from Elliott in which he stated that he could not afford an attorney. Therefore, this appeal was submitted upon the opening brief and the record.
 

 [6]
 

 In Heppner v. McCombs, 82 Nev. 86, 411 P.2d 123 (1966), this court decided that because a will made no express provision that social security benefits supplanted a deceased father’s child support obligation, the father’s estate was obligated to pay child support until the children reached majority. In a footnote, this court noted, “[w]e make no determination, however, whether Social Security benefits are a fund which the testator, by expressed intent, could substitute for an existing obligation for child support.”
 
 Heppner,
 
 82 Nev. at 89 n.1, 411 P.2d at 125 n.1.
 

 Subsequently, in Bailey v. Bailey, 86 Nev. 483, 471 P.2d 220 (1970), this court determined that, in the absence of a specific statement in a divorce decree that a child support obligation survived the death of the father, the decree did not bind the father’s estate. Recognizing the “host of unanswered questions” that arise when a decedent’s estate is ordered to pay child support, the court left the following question unanswered: “Are benefits accruing to the child from the father’s death, such as social security payments, ... in addition to or a credit against the support payments?”
 
 Bailey,
 
 86 Nev. at 488, 471 P.2d at 223.
 

 [7]
 

 At the time the order in the instant case was filed, NRS 125A.290 provided that a district court’s order establishing visitation must sufficiently define the visitation such that a parent would be able to rely on the order to enforce the right to visitation.
 
 See
 
 1993 Nev. Stat., ch. 516, 2 at 2137. NRS 125A.290 was subsequently amended.
 
 See
 
 1995 Nev. Stat., ch. 468, 2 at 1493; 1995 Nev. Stat. ch. 610, 2 at 2289. We note that the district court’s order in the instant case defined the right of visitation with sufficient particularity. The order awarded Elliott the following visitation: (1) the first week of Christmas vacation in odd-numbered years and the second week of Christmas vacation in even-numbered years; (2) Easter vacation; and (3) June 16 each year until the end of summer vacation. The order also specified the days that the visitation was to begin and how travel arrangements were to be made. During the summer visitation with Elliott, the district court ordered that Julie would have visitation on the fifth weekend. Thus, the district court’s visitation order complies with the pertinent statutory authority.
 

 [8]
 

 The Honorable Miriam Shearing, Chief Justice, voluntarily recused herself from participation in the decision of this appeal.