714 A.2d 163

James E. DRUMMOND

v.

STATE of Maryland, t/u/o Shirley DRUMMOND.

No. 14, Sept. Term, 1998.

Court of Appeals of Maryland.

July 29, 1998.

Ramon Rozas III (Law Offices of R. Steven Friend, on brief), Cumberland, for Appellee.

Joseph B. Spillman, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for Appellee.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, RAKER, WILNER and CATHELL, JJ.

CATHELL, Judge.

■ In this case we address whether a noncustodial parent, receiving social security disability benefits at the time he enters into a child support consent order, is entitled to a modification of child support after his minor child applies for and receives social security disability dependency benefits. We hold that the parent who sought modification of the child support award was unable to show a material change in circumstances justifying the exercise of the court's discretion to modify the parent's child support obligation. We also hold that although a noncustodial parent may be entitled to a modification of a child support award when his or her child receives social security disability dependency payments, the noncustodial parent is not entitled to an automatic credit against the child support obligation equal to the amount of social security disability dependency benefits received by the minor child; a court in its discretion may, if the circumstances warrant, adjust the amount of the child support obligation of the parent consistent with the child support guidelines. We shall affirm the judgment of the Circuit Court for Allegany County that neither allowed such a credit nor modified the parent's support obligation.

### I.

On October 25, 1994, the State, to the use of Shirley A. Drummond, filed in the Circuit Court for Allegany County a complaint seeking child support from James A. Drummond, appellant. In appellant's answer to the complaint, he stated that he was unable to work because "he is totally disabled and has been found to be so disabled by the United States Social Security Administration." Thereafter on March 24, 1995, appellant and Mrs. Drummond entered into a consent order for child support under which appellant was ordered to pay $38 per month for the support of his minor son, Joshua M. Drummond.

In July of 1995, Joshua began receiving social security disability dependency benefits of $53 per month. Thereafter,

on August 1, 1995, appellant moved to modify the child support order on the ground that Joshua was receiving from the Social Security Administration social security disability dependency payments and that those payments should be credited against appellant's support obligation. A master's hearing for reduction in child support was held on December 5, 1995. During that hearing, Mrs. Drummond testified that she was receiving Aid to Families with Dependent Children (AFDC) benefits of $247 per month, Joshua was receiving social security disability dependency benefits of $53 per month and child support payments from appellant of $38 per month. Mrs. Drummond also testified that the AFDC benefits were reduced from $292 per month as a result of the social security disability dependency payments Joshua began receiving in July of 1995.[1] Appellant testified that he received $425 per month in social security disability benefits and $53 per month in supplemental security income (SSI) benefits.

The master, mistakenly finding that the child received "$425.00 per month in Social Security Disability benefits and SSI benefits of $53.00 per month," concluded that the "child appears to be totally emancipated at least financially as a result of these particular benefits," and recommended that support be suspended. The State filed timely exceptions to the master's recommendation. The Circuit Court for Allegany County held that the master erred in suspending appellant's child support obligation because the master erroneously found the child was receiving $478 per month. The court remanded the matter to the master "for the purpose of calculating support under Sec. 12–204(e) by using that aspect of the guidelines that provides for support within the range of $20 to $50 per month, 'based on resources and living expenses of obligor.' "

---

1. The payments were for Joshua although sent to his mother on his behalf. The total added income to Joshua and Mrs. Drummond as a result of Joshua's receipt of social security disability dependency benefits and the resulting reduction of AFDC benefits was $8 per month.

A second master's hearing was held on January 28, 1997. Finding that appellant was not entitled to a modification, the Master stated:

[T]he Master has been instructed to give any monies coming in from Social Security as . . . income to the custodial parent which would be the mother in this case. That would be $53.00 per month on that. Mr. Drummond has roughly four hundred forty dollars of Social Security. . . . [U]sing the Guidelines, I normally set child support in these matters at roughly $50.00 so I think that the $38.00 per month would be the appropriate figure and I will leave it at that. So, the Motion to Modify will remain the same, it will be denied.[2]

Appellant filed exceptions to the master's recommendations asserting that "the Master erred in finding that [appellant] was not entitled to a credit against his child support obligation for the Social Security disability payment currently being made directly to his minor child, Joshua Drummond." On July 1, 1997, the circuit court, in a written order, accepted the master's findings, conclusions, and recommendations.

Appellant filed a Notice of Appeal on July 31, 1997. We issued a writ of certiorari to the Court of Special Appeals prior to argument in that court. We hold that the Circuit Court for Allegany County did not err in denying appellant's request to modify the child support obligation.

## II.

Two methods are available by which a parent may obtain modification of a child support award. First, pursuant to Maryland Code (1984, 1991 Repl. Vol), section 12–104 of the Family Law Article (FL), a court may modify a child support

---

2. In applying the guidelines, the master considered the social security disability dependency benefits received by Mrs. Drummond on behalf of Joshua as income to Mrs. Drummond. As we shall note *infra,* social security disability dependency payments are made to the child. Accordingly, they are not considered income either to the custodial parent or to the noncustodial parent in the application of the child support guidelines.

award "subsequent to the filing of a motion for modification and upon a showing of a material change of circumstance." A court also may modify a child support award pursuant to section 12–202(b)(1) of the Family Law Article, which states that "the adoption of the guidelines set forth in this subtitle may be grounds for requesting a modification of a child support award based on a material change in circumstances." The adoption of the guidelines may not be the basis for a modification of child support "unless the use of the guidelines would result in a change in the award of 25% or more." FL § 12–202(b)(2).[3] As the award appellant seeks to have modified post-dates the adoption of the guidelines, section 12–104 of the Family Law Article is the only statutory provision under which appellant may seek a modification of the child support award in this case.

---

**3.** We explained the circumstances under which section 12–202(b) was applicable in *Walsh v. Walsh*, 333 Md. 492, 499–500 635 A.2d 1340, 1343 (1994). Quoting from the decision of the Court of Special Appeals, with which we agreed, this Court stated:

The adoption of the guidelines occurred in 1989. Their required use as establishing presumptively correct amounts to be awarded became effective 10 April 1990. Obviously, neither adoption of the guidelines for advisory purposes only nor requiring their use by the courts could affect support awards made thereafter in any *unanticipated* way. After the guidelines were adopted, and certainly after their use as establishing presumptively correct support standards was required, the courts and, presumably, the parties were aware of and familiar with the new guidelines and had an opportunity to rely on them in determining the proper amount of support to be awarded. Therefore, there should be no legitimate need to relitigate such awards unless and until one of the parties could show a material change in circumstances based on other factors.

Moreover, the fact that the statute expressly made *adoption* of the guidelines the basis for a material change in circumstances claim clearly shows an intent to restrict application of the section to pre-guideline awards that were made without benefit of the new law. It is only with respect to support orders existing at the time the guidelines were adopted that the General Assembly would have deemed that there was a need for modification to obtain the benefits of the new guidelines.

*Id.* (quoting *Walsh v. Walsh*, 95 Md.App. 710, 715–17, 622 A.2d 825, 828–29 (1993)). We added that section 12–202(b) "was intended as a transitional statute clarifying when the child support guidelines are applicable to pre-guidelines orders." *Id.* at 500, 635 A.2d at 1344.

Section 12–104 allows a court to modify a child support award only after the filing of a motion for modification and a finding of a material change in circumstances. We explained the limitation on the trial court's authority to modify a child support award in *Wills v. Jones*, 340 Md. 480, 488–89, 667 A.2d 331, 334–35 (1995):

Before a court can consider the level of support to which a child is entitled under the guidelines, it must determine that it has authority to grant the requested motion. Section 12–104 provides the Maryland courts with authority to modify a child support award only when (1) there has been a change of circumstance and (2) the change is material. *See* § 12–104(a). These limitations upon the courts' authority to modify child support awards tend to inhibit the filing of a deluge of motions seeking modification of child support orders.

The "material change of circumstance" requirement limits the circumstances under which a court may modify a child support award in two ways. First, the "change of circumstance" must be relevant to the level of support a child is actually receiving or entitled to receive. Second, the requirement that the change be "material" limits a court's authority to situations where a change is of sufficient magnitude to justify judicial modification of the support order. *See Walsh v. Walsh*, 333 Md. 492, 503, 635 A.2d 1340 (1994). [Footnote omitted].

The trial court, after finding a material change in circumstances, must then apply the child support guidelines of sections 12–202 to 12–204 of the Family Law Article in order to determine the level of support to which the child is entitled. *Wills*, 340 Md. at 491, 667 A.2d at 336.

██ Although there are various ways a change in circumstances could be relevant to the modification of a child support award, there are two obvious ways in which a change is relevant to the level of support a child actually is receiving or entitled to receive. "First, a relevant change in circumstances may occur upon the passage of some event causing the level of support a child actually receives to diminish or increase."

*Wills,* 340 Md. at 488 n. 1, 667 A.2d at 335 n. 1. A second relevant change in circumstance may occur when there is a change in the income pool used to calculate the child support obligation.

We examined a potential change in circumstance causing the level of support a child actually receives to diminish or increase in *Walsh.* In that case, a prior support order required the noncustodial parent to pay child support in an amount below the amount provided for in the child support guidelines. The order also permitted the custodial parent to use the family home and required the noncustodial parent to pay one-half of the mortgage. Prior to the hearing on the modification, the parents entered into an agreement whereby the custodial parent would purchase the noncustodial parent's interest in the family home. Consequently, the noncustodial parent's obligation to pay one-half of the mortgage ceased.

Holding that a remand was necessary to determine whether there was a material change in circumstance pursuant to section 12–104, we stated:

> [The] obligation to pay one-half of the mortgage payments may have been a reason for ordering support below the guidelines. If so, when that obligation ceased, there could be a change of circumstances. Whether that change was material will have to be determined on remand. Only part of [the noncustodial parent's] mortgage payments directly benefitted the children; part of the payments benefitted [the custodial parent] and part of the payments directly benefitted [the noncustodial parent] by increasing the equity in the house.... [A] remand is necessary to determine whether, based on the current circumstances including the cessation of [the noncustodial parent's] mortgage payments, there was a substantial change of circumstances and, if so, giving due regard to the entire circumstances including the parties' agreement and their change in income, what amount of child support should be ordered.

*Walsh,* 333 Md. at 502–03, 635 A.2d at 1345 (footnote omitted).

A second common change in circumstance relevant to a modification of child support is a change in the income pool

from which the child support obligation is calculated. In *Wills*, 340 Md. at 488 n. 1, 667 A.2d at 335 n. 1, we noted that an example of a relevant change in the income pool could be one parent losing his or her job. We went on to note that a parent's incarceration would be a relevant change in circumstance that had an effect on the income pool because the incarceration would make it impossible for the parent to maintain employment. *Id.* at 488–89 n. 1, 667 A.2d at 335 n. 1.

In *Petrini v. Petrini*, 336 Md. 453, 648 A.2d 1016 (1994), we affirmed the trial court's consideration of non-cash gifts to a parent in determining the parent's actual income and thereafter calculating the father's child support obligation. Addressing the parent's contention that the gifts he was receiving were not indefinite, we noted that if at some point the parent no longer received the gifts, he could request a modification of his child support obligation based upon a material change in circumstances. *Id.* at 467, 648 A.2d at 1022. *See also Moore v. Tseronis*, 106 Md.App. 275, 664 A.2d 427 (1995) (noting that parent's relocation to a rural area and subsequent reduction in salary resulting from the relocation constituted a material change in circumstances); *Lieberman v. Lieberman*, 81 Md. App. 575, 568 A.2d 1157 (1990) (affirming trial court's finding of a material change in circumstances when parent's net income rose from $200,000 to $386,800).

▮▮▮▮ Not only must there be a change in circumstances, it must be material. That is, the change must be of a significant degree so as to support the modification. With respect to the materiality of the change in circumstance, a trial court "[i]n making this threshold determination that a material change of circumstance has occurred ... *must specifically focus on the alleged changes in income or support that have occurred since the previous child support award.*" *Wills*, 340 Md. at 489, 667 A.2d at 335 (emphasis added).

## III.

In setting child support obligations, a court is required to utilize the child support guidelines. There is a rebuttable

presumption that the amount of child support resulting from the application of the guidelines is correct. FL § 12–202; *Walsh*, 333 Md. at 498, 635 A.2d at 1343. In calculating a child support award, a court first must determine the adjusted actual income of each parent, as defined in section 12–201. *See Petrini*, 336 Md. at 461, 648 A.2d at 1019–20. It then adds the adjusted actual income of both parents to arrive at the combined adjusted actual income. FL § 12–201(e). A court next determines the basic child support award "in accordance with the schedule of basic child support obligations in subsection (e) [of section 12–204 of the Family Law Article]." FL § 12–204(a)(1). The basic support obligation derived from the schedule in section 12–204(e) then is divided between the parents in proportion to their adjusted actual incomes. FL § 12–204(a). Certain child care expenses and extraordinary medical expenses incurred on behalf of a child must be added to the basic child support obligation. *See* FL § 12–202(g)–(h). Transportation and school expenses may also be added. *See* FL § 12–202(i). A court, however, may depart from the guidelines if their application would be unjust or inappropriate. FL § 12–202(a)(2)(ii).

An examination of the child support guidelines indicates that in setting the basic child support obligation, a court looks to the adjusted actual income of the parents and the combined adjusted actual income, as those terms are defined in section 12–201 of the Family Law Article. At the time appellant entered into the consent decree and the trial court entered an order for the payment of child support, Mr. Drummond was receiving social security disability benefits of $384 per month. Appellant received an increase in his social security disability payments so that he was receiving $425 per month at the time of the hearing on his motion to modify.

Mrs. Drummond received $292 per month in AFDC benefits at the time of the entry of the 1995 child support order. She testified that the AFDC benefit payments were reduced to $247 per month after Joshua began receiving social security disability dependency payments of $53 per month.

▋ Maryland's child support guidelines do not provide that income received by a child is to be considered in determining the basic child support obligation. Although the income a child receives from other sources may be a relevant consideration in departing from the guidelines, initially it is not normally part of the calculation of the basic child support obligation. Unlike Maryland's child support guidelines, many states' statutes, which we shall discuss in part IV of this opinion, expressly provide that income received by a child may be a consideration in departing from the presumptively correct child support obligation. These statutes, however, do not provide that income received by a child is to be considered in calculating the basic child support obligation. Likewise, any benefits received by a child from a source other than a child's parents generally are not relevant in determining the basic child support obligation of the parents under Maryland's child support guidelines.

▋ It is the parents with whom lies the legal duty to support their child. In accordance with the child support guidelines, a court normally examines only the combined adjusted actual income of the parents in order to determine the basic child support obligation. As we have explained, the combined adjusted actual income of the parents is the sum of each parent's adjusted actual income. This amount is used to determine the basic child support obligation.

▋ A comparison of the circumstances at the time of the entry of the original consent order on March 24, 1995, and the circumstances at the time appellant sought modification of the child support award on August 1, 1995, leads us to conclude that there was no material change in circumstances in this case justifying a downward modification of the child support award. At the time of the initial order, appellant was receiving $384 per month in social security disability payments. He was receiving $425 at the time he sought modification of the child support award. Mrs. Drummond was receiving $292 per month in AFDC benefit payment at the time of the original order, but was receiving only $247 per month in AFDC benefit

payment at the time of the hearing on the modification.[4] The only change in circumstance between the time of the entry of the original child support award and the time of the requested modification was Joshua's application for and receipt of social security disability dependency benefits. Although Joshua was not receiving these benefits at the time of the entry of the original award, he legally was entitled to the benefit payments pursuant to 42 U.S.C. § 402(d) at that time.[5]

At the time of the entry of the original award, the relevant factors in calculating appellant's child support obligation were appellant's and Mrs. Drummond's actual adjusted income. These same factors were relevant at the time appellant sought modification of his child support obligation. As we just explained, there was no substantial change in appellant's or Mrs. Drummond's actual adjusted income to justify granting appellant's motion to modify his child support award downward. The only change in circumstances related to Joshua's receipt of social security disability dependency benefits, a benefit to which he was entitled at the time appellant entered into the consent decree and at the time the original decree was signed by the court.[6]

---

**4.** The AFDC benefits were not considered income to Mrs. Drummond at the time of the 1995 consent order. They were excluded from income under the Family Law Article. *See* Md.Code (1984, 1991 Repl.Vol.) § 12–201(c)(5) of the Family Law Article.

**5.** Section 402(d) of the United States code is the pertinent provision regarding a minor child's right to receive social security disability dependency benefits if one of his or her parents is receiving social security disability payments. It states in relevant part:

Every child (as defined in section 216(e) [42 U.S.C. § 416(e) ] ) of an individual entitled to old-age or disability insurance benefits, or of an individual who dies a fully or currently insured individual, if such child—
(A) has filed application for child's insurance benefits,
(B) at the time such application was filed was unmarried and (i) either had not attained the age of 18 or was a full-time elementary or secondary school student and had not attained the age of 19 ...
(C) was dependant upon such individual ... shall be entitled to a child's insurance benefit....

42 U.S.C. § 402(d) (1998).

**6.** Because Joshua was entitled to social security disability dependency benefits at the time of the original child support calculations, his receipt

Following the child support award in 1995, Joshua's family unit received $330 per month ($292 + $38). After Joshua began receiving social security disability dependency benefits, the AFDC benefits Mrs. Drummond received decreased to $247 per month. These AFDC benefits were paid to Mrs. Drummond on account of Joshua.[7] Following Joshua's receipt of the social security disability dependency benefits, the family unit to which Joshua belonged had an income of $338. We do not believe this change in income to Joshua's family sufficiently substantial so as to constitute a substantial change in circumstances warranting the modification of appellant's child support obligation.

We note that if appellant were concerned about Joshua's receipt of social security disability dependency benefits, he could have requested a departure from the guidelines at the time of the original order, as he was aware of his disability at that time. He did not do so. Instead, he signed a consent decree obligating him to pay support of $38 per month.

## IV.

Even if appellant were able to show a material change in circumstances so as to give a court authority to modify his child support award, appellant's assertion that he is "entitled

---

of them cannot be a material change in circumstances. As we indicate elsewhere, the change in a child's assets ordinarily would not constitute a change in circumstances in any event. There may be situations, however, where a change in a child's own financial circumstances could be so extraordinary as to constitute a change in circumstances enabling a trial court to revisit the issue of whether adherence to the guidelines would be "unjust or inappropriate."

7. The AFDC statute in effect at the time of the master's recommendation stated that in order for a family to receive AFDC benefits, it was necessary that the family include a minor child. AFDC benefits have been replaced by block grants to the states effective July 1, 1997, under the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub.L. No. 104–193, 110 Stat 2105 (1996), codified in 42 U.S.C. § 601 et. seq. The new statutory provisions authorizing grants to the states likewise require that states receiving grants under this program only provide assistance to families with minor children. *See* 42 U.S.C. § 608(a)(1) (1998).

to a credit against his child support obligation for the Social Security disability payment currently being made directly to his minor child, Joshua Drummond" still would be unavailing.

Once a court finds that a material change of circumstances has been shown, the court computes the level of support to which a child is entitled using the child support guidelines. *See Wills,* 340 Md. at 491, 667 A.2d at 333. Given the relatively small change in the parents' actual income in this case, application of the child support guidelines would not lead to a child support award different than that awarded pursuant to the initial order. Although the child support guidelines provide for the addition to the basic child support guidelines of certain expenditures, FL § 12–204(g)–(i), there is no provision authorizing a court to grant a credit to a parent for income received by the child from some other resources such as income derived from a child's employment, investments, or gifts. In order to depart from the presumptively correct child support award calculated in accordance with the child support guidelines, a court must do so consistently with the statute. The statute permits a departure from the guidelines when "the application of the guidelines would be unjust or inappropriate." FL § 12–202(a)(2)(ii). We do not perceive this to be such a circumstance.

The Court of Special Appeals in *Anderson v. Anderson,* 117 Md.App. 474, 700 A.2d 844 (1997), *vacated on other grounds,* 349 Md. 294, 708 A.2d 296 (1998), examined whether a parent was entitled to receive a credit against child support for social security retirement benefits being paid directly to his minor children. Judge Eyler, writing for the court, stated:

> Despite the fact that the guidelines do not expressly provide for treatment of Social Security benefits paid directly to or on behalf of the minor children, we believe that trial courts may consider such benefits when determining whether to deviate from the guidelines under § 12–202(a)(2), or when setting the amount of child support in accordance with § 12–204(d).
>
> . . . .

While the receipt of Social Security benefits by the children is the type of consideration affecting the financial needs of the children, the trial court, under § 12–202(a)(2) cannot simply reduce the child support award without making certain factual findings mandated by § 12–202(a)(2)(iv). That subsection provides as follows:

(iv) 1. If the court determines that the application of the guidelines would be unjust or inappropriate in a particular case, the court shall make a written finding on the record stating the reasons for departing from the guidelines.

(2) The court's finding shall state:

A. the amount of child support that would have been required under the guidelines;

B. how the order varies from the guidelines;

C. *how the finding serves the best interests of the child;* and

D. in cases in which items of value are conveyed instead of a portion of the support presumed under the guidelines, *the estimated value of the items conveyed.*

Accordingly, in a guidelines case involving Social Security benefits or other income of the minor child or children, a trial court may properly deviate from the guidelines as long as it makes the requisite findings of fact, including a finding of how the award serves the best interests of the child. As we held in *In re Joshua W.,* a downward departure from the guidelines could serve the best interests of a child if, for example, the child was in foster care and the court found that such an adjustment was necessary for the parent to obtain the economic stability necessary to regain custody and properly care for the child. 94 Md.App. [486] at 504, 617 A.2d 1154 [(1993)]. Similarly, a downward departure could benefit the child if the child's needs were being met by the lower award and the lower award permitted the noncustodial parent to maintain a better household for extended visitation. Conversely, the existence of additional income to meet the needs of the minor child might, in a particular

case, be offset by a finding that the child's needs exceed the amount provided by guidelines and the supplemental income. Essentially, the trial court must consider the particular circumstances of each case and exercise its discretion accordingly.

*Anderson,* 117 Md.App. at 484–87, 700 A.2d at 849–50 (emphasis added).

 Although section 12–202(a) does not specifically provide that income received by a child is to be considered as a factor in deviating from the guidelines, we agree with the Court of Special Appeals that the receipt of income by a child may be a relevant factor in determining whether "the application of the guidelines would be unjust or inappropriate." FL § 12–202(a)(2)(ii). A trial court has the discretion to deviate from the child support award calculated pursuant to the guidelines if, after considering income of a child, their application would be unjust or inappropriate in a particular case. This approach is consistent with other states' child support guidelines, which explicitly provide that a child's income may be a factor in determining whether to deviate from the guidelines. *See* Ala. R. Jud. Admin. 32(A)(1)(d); Alaska Civ. R. 90.3(c); *In re Guidelines for Child Support,* 314 Ark. 644, 863 S.W.2d 291, 295 (1993); Fla. Stat. Ann. § 61.30(11)(b) (West 1997 & 1998 Supp.); Ill.Rev.Stat. ch. 750, para. 5/505(a)(2)(a) (1993 & 1998 Supp.); Ky.Rev.Stat. Ann. § 403.211(3)(d) (Michie 1984 & 1996 Supp.); La.Rev.Stat. Ann. § 9:315.7 (West 1991 & 1997 Supp.); Me.Rev.Stat. Ann. tit. 19, § 2007.3.D (West 1998); Michigan Child Support Formula Manual 4 (1998); Minn.Stat. Ann. § 518.551(c)(2) (West 1990 & 1998 Supp.); Miss.Code Ann. § 43–19–103(b) (1993); Mont. Admin. R. 46.30.1543(1)(m); N.J. Ct. R., Appx. IX.21(*l*); N.Y. Fam. Ct. Act § 413.1(f)(1) (McKinney 1998); Tex. Fam.Code Ann. § 154.123(b)(3) (West 1996); Vt. Stat. Ann. tit. 15, § 659(a)(1) (1989 & 1997 Supp.); Va.Code Ann. § 20–108.1.B.9 (Michie 1995 & 1998 Supp.); Wa. Rev.Code § 26.19.075(vii) (1994). *Cf.* Idaho R. Civ. Pro. 6(c)(6) Section 10(d)(1) (permitting examination of income of a child when parents' income exceeds $150,000).

An automatic credit for social security disability dependency benefits received by a child, however, is unavailable to the noncustodial parent under the Maryland child support guidelines. A trial court has the discretion to deviate from the guidelines only when their application would be unjust or inappropriate. This view is in accord with that of other states that have held a trial court may consider a child's receipt of social security disability dependency benefits and has the discretion to deviate from the child support guidelines under the appropriate circumstances. *See Graby v. Graby,* 87 N.Y.2d 605, 611, 641 N.Y.S.2d 577, 580, 664 N.E.2d 488, 491 (1996) ("Social Security benefits paid to petitioner's dependents on the basis of his disability are 'financial resources' of the children that should be considered by the court after the basic support obligation is calculated and only then pursuant to a[n] . . . 'unjust or inappropriate' determination."); *Stultz v. Stultz,* 659 N.E.2d 125 (Ind.1995) (noting trial court has discretion to determine whether to credit social security disability dependency payments received by the child toward a noncustodial parent's child support obligation); *In re Marriage of Lawhorn,* 119 Or.App. 225, 850 P.2d 1126 (1993) (holding trial court may consider social security disability dependency benefits received by the child and may deviate from the application of the child support guidelines if application of the guidelines is unjust or inappropriate). *See also Griffin v. Avery,* 120 N.H. 783, 424 A.2d 175 (1980) (noting in a case prior to adoption of child support guidelines that trial court has discretion to determine whether to grant obligor parent a credit); *Nibs v. Nibs,* 625 P.2d 1256 (Okla.1981) (holding prior to adoption of child support guidelines that a credit was discretionary); *Davis v. Davis,* 141 Vt. 398, 449 A.2d 947 (1982) (holding noncustodial parent not entitled to an automatic credit and court could order child support in addition to social security disability dependency benefits); *Hinckley v. Hinckley,* 812 P.2d 907 (Wyo.1991)(indicating trial court has discretion to modify child support award due to social security disability dependency benefits received by children).

In addition to being consistent with the child support guidelines, this approach is consistent with the often-enunciated policies of this State regarding child support and children generally. A parent has both a common law and statutory duty to support his or her minor child. *See* FL § 5–203(b); *Garay v. Overholtzer*, 332 Md. 339, 368–69, 631 A.2d 429, 432 (1993); *Middleton v. Middleton*, 329 Md. 627, 632–33, 620 A.2d 1363, 1365 (1993); *Carroll County Dept. of Social Servs. v. Edelmann*, 320 Md. 150, 170–71, 577 A.2d 14, 23 (1990). We previously have noted the rationale underlying a parent's obligation of support:

> "[T]he duty of parents to provide for the maintenance of their children, is a principle of natural law; an obligation laid on them not only by nature herself, but by their own proper act, in bringing them into the world: ... By begetting them therefore they have entered into a voluntary obligation to endeavor, as far as in them lies, that the life which they have bestowed shall be supported and preserved."

*Knill v. Knill*, 306 Md. 527, 531–32, 510 A.2d 546, 548 (1986)(quoting 1 W. Blackstone, *Commentaries* * 447). *See also Warren v. Warren*, 336 Md. 618, 629, 650 A.2d 252, 257 (1994) (quoting *Knill* ). To relieve a parent entirely of his or her support obligation because the child receives a benefit to which he or she is entitled from some other source would not ordinarily be consistent with this fundamental principle of family law.

Moreover, Maryland has adopted the Income Shares Model in calculating child support awards. As Judge Chasanow opined for the Court, "[t]he conceptual underpinning of this model is that a child should receive the same proportion of parental income, and thereby enjoy the standard of living, he or she would have experienced had the child's parents remained together." *Voishan v. Palma*, 327 Md. 318, 322, 609 A.2d 319, 321 (1992). When a parent becomes disabled and thereafter receives social security disability benefits, his or her child is generally entitled to social security disability dependency benefits regardless of whether the child's par-

ents remain together or separate. It is the child, not the parent, who is entitled to the social security disability dependency benefit pursuant to 42 U.S.C. § 402(d). It would be inconsistent with the Income Shares Model to give a child of separated parents the benefit of only social security disability dependency payments when a child, whose parents remained together, has the benefit of both his own direct social security disability dependency payment and the indirect benefit of the social security disability payment received by the parent. Our approach gives a child whose parents have not remained together the benefit of both the social security dependency benefit and the parent's social security disability benefit through the award of child support.

This approach also puts a child of separated parents in the same situation as a child of parents who are not separated because it allows the child to maintain the same standard of living as if the parents had not separated. *See Graby,* 87 N.Y.2d at 612, 641 N.Y.S.2d at 581, 664 N.E.2d at 492 ("[H]ad the marriage not been dissolved, petitioner's children would have enjoyed a standard of living based on both parents' income plus the social security benefits they received as petitioner's dependents."); *cf. Stultz,* 659 N.E.2d at 129 (noting in a social security retirement benefits case that if the marriage had not been dissolved, the children would have had the benefit of their parent's social security retirement benefits and their own social security retirement dependency benefit). The approach we adopt today is consistent with the Income Shares Model and also gives a court the discretion to deviate from the basic child support obligation in the appropriate circumstances to account for a benefit payment received by the child.

We are cognizant that numerous states have adopted the position that a noncustodial parent is entitled to a credit toward his or her child support obligation for social security disability dependency payments received by his or her minor child. *See* MICHAEL A. DISABATINO, RIGHT TO CREDIT ON CHILD SUPPORT PAYMENTS FOR SOCIAL SECURITY OR OTHER GOVERNMENT DEPENDENCY PAYMENTS MADE FOR BENEFIT OF CHILD, 34

A.L.R.5th 447 (1995). The annotation lists the following states as having adopted the position that a credit is available automatically to a noncustodial parent for social security disability payments received by the child: Alabama, California, Georgia, Illinois, Indiana, Iowa, Kansas, Louisiana, Massachusetts, Michigan, Mississippi, Missouri, Nebraska, New Mexico, New York, Ohio, Rhode Island, South Dakota, Tennessee,[8] and Washington. *See id.* at 469–70. Other state courts have adopted this same position since 1994. *See Department of Revenue v. Fry,* 926 P.2d 1170 (Alaska 1996 ); *Miller v. Miller,* 929 S.W.2d 202 (Ky.Ct.App.1996); *Holmberg v. Holmberg,* 578 N.W.2d 817 (Minn.Ct.App.1998); *In re Marriage of Cowan,* 279 Mont. 491, 928 P.2d 214 (1996); *Hern v. Erhardt,* 113 Nev. 142, 948 P.2d 1195 (1997); *Nazworth v. Nazworth,* 931 P.2d 86 (Okla.Civ.App.1996); *In the Interest of Allsup,* 926 S.W.2d 323 (Tex.Ct.App.1996); *Whitaker v. Colbert,* 18 Va. App. 202, 442 S.E.2d 429 (1994).

Although the position of some of the states seems to be that a credit is available automatically to a noncustodial parent, for numerous reasons we are not persuaded by the reasoning set forth in the cases. First, some of the states listed in the annotation either have abandoned or criticized that position.[9] New York intermediate appellate courts had adopted the position that a credit was available. *See Graby v. Graby,* 196 A.D.2d 128, 607 N.Y.S.2d 988 (1994); *Passaro v. Passaro,* 92

---

**8.** Although listed in the annotation as a state that grants an automatic credit, it seems the grant of such a credit is discretionary. In *Orr v. Orr,* 871 S.W.2d 695, 696 (Tenn.Ct.App.1993), the court stated: "Social security disability benefit payments paid to the custodial parent [on the child's behalf] *may* be credited against the disabled parent's support obligation." (Emphasis added.)

**9.** We note the converse of the above proposition is also true. Some states, while initially holding that an automatic credit was unavailable, have overruled prior case law and now hold that a credit is available to the obligor parent for social security disability dependency benefits received by the child. *See Holmberg,* 578 N.W.2d 817, *overruling In re Marriage of Haynes,* 343 N.W.2d 679 (Minn.Ct.App.1984); *Weaks v. Weaks,* 821 S.W.2d 503 (Mo.1991), *overruling Craver v. Craver,* 649 S.W.2d 440 (Mo.1983).

A.D.2d 861, 459 N.Y.S.2d 839 (1983). The Court of Appeals of New York, examining its child support guidelines, subsequently held in *Graby,* 87 N.Y.2d 605, 641 N.Y.S.2d 577, 664 N.E.2d 488, however, that a credit is not available automatically against a child support obligation for social security disability dependency benefits received by the child.

Similarly, Louisiana Courts of Appeal initially had taken the position that a credit was available to the obligor parent for social security disability dependency benefits received by the obligor's child. *See Faul v. Faul,* 548 So.2d 957 (La.Ct.App. 1989); *Folds v. Lebert,* 420 So.2d 715 (La.Ct.App.1982). More recently, in *Phillips v. Phillips,* 673 So.2d 333, 335 (La.Ct.App. 1996), the noncustodial parent sought modification of her child support obligation due to the social security disability dependency benefits received by her children. Affirming the trial court's refusal to allow her a credit, the court noted that a statutory provision permitted the court to consider resources received by the child and to deviate from the basic child support obligation under the appropriate circumstances. *See also Gibson v. Gibson,* 592 So.2d 855 (La.Ct.App.1991) (affirming trial court's decision to order child support in addition to social security disability dependency benefits received by child).

The Michigan Court of Appeals in *Jenerou v. Jenerou,* 200 Mich.App. 265, 267–68, 503 N.W.2d 744, 746 (1993), criticized the position, that an automatic credit was available, that it had adopted previously in *Frens v. Frens,* 191 Mich.App. 654, 478 N.W.2d 750 (1991). The Michigan Court of Appeals stated:

> We are satisfied that a parent should not get credit against a child support arrearage merely because the child receives benefits from the federal government. The child does not receive the benefits because the federal government has decided to assume the parent's obligation to support the child, but only because the child is determined to be eligible for the benefits under federal law. See 42 U.S.C. § 402(d).

We believe that benefits paid to the child should be treated like any other change in circumstance, which might warrant a modification in the support order.

*Jenerou,* 200 Mich.App. at 267–68, 503 N.W.2d at 746.

We also note many states that allow the obligor parent a credit toward his or her child support obligation due to social security payments received by the obligor's minor child have specific statutory provisions in their respective child support guidelines authorizing the credit. For instance, the relevant Colorado provision of the child support guidelines states:

In cases where the custodial parent receives periodic disability benefits granted by the federal "Old-age, Survivors, and Disability Insurance Act" on behalf of dependent children due to the disability of the noncustodial parent ... the noncustodial parent's share of the total child support obligation as determined pursuant to subsection (14) of this section shall be reduced in an amount equal to the amount of such benefits.

Colo.Rev.Stat. Ann. § 14–10–115(16.5)(1997). *See also In re Marriage of Wright,* 924 P.2d 1207 (Colo.Ct.App.1996) (noting prior case law holding credit was discretionary and 1992 statutory provision mandating credit). Other states have similar provisions in their respective child support guidelines statutes. *See* Cal. Fam.Code § 4504 (West 1994 & 1998 Supp.); Regs., Conn. State Agencies § 46–215a–2(b)(6); Idaho R. Civ. Pro. 6(c)(6) Section 11; Iowa Code § 598.22 (1996 & 1998 Supp.); Michigan Child Support Formula Manual 5–6 (1998); Mont. Admin. R. 46.30.1542; N.J. Child Support Guidelines, Appx. IX–A; Utah Code Ann. § 78–45–7.5(8)(b) (1996 & 1997 Supp.); Wash. Rev.Code § 26.18.190(2) (1994); W. Va.Code § 48A–1B–9 (1996 & 1997 Supp.). *See also State ex rel. Pfister v. Larson,* 569 N.W.2d 512 (Iowa Ct.App.1997) (discussing availability of a statutory credit for social security disability dependency benefits received by a child); *Herd v. Herd,* 307 N.J.Super. 501, 704 A.2d 1340 (App.Div.1998) (reading Appendices IX–A and 1X–B so as to require a credit to the obligor parent for social security disability dependency bene-

fits received by child); *Pasternak v. Pasternak,* 310 N.J.Super. 483, 708 A.2d 1235 (Ch.Div.1997) (recognizing statutory credit); *In re Marriage of Briscoe,* 134 Wash.2d 344, 949 P.2d 1388 (1998) (recognizing statutory credit); *In re Marriage of Hughes,* 69 Wash.App. 778, 850 P.2d 555 (1993) (noting statutory credit was available for social security disability dependency benefits received by an obligor's minor child).[10] Unlike these states' statutes, Maryland's child support guidelines contain no specific statutory provision authorizing a court to grant a credit to a noncustodial parent for social security disability dependency payments received by the child due to the noncustodial parent's disability.

Finally, we note some of the state cases that held a credit was available did so prior to their state's adoption of mandatory child support guidelines. We do not believe these courts have examined thoroughly the availability of the credit in light of the adoption of the guidelines by their respective states. Some courts, examining the availability of the credit since the adoption of the guidelines, have noted that the adoption of presumptively correct obligations has impacted the noncustodial parent's ability to obtain a credit for social security disability dependency benefits received by a child. In *Guthmiller v. Guthmiller,* 448 N.W.2d 643, 647–48 (N.D.1989), the Supreme Court of North Dakota concluded that a child's

---

**10.** Although all these states allow a credit for social security disability dependency payments received by the child, they are not uniform in the method by which the noncustodial parent receives a credit. For instance, the Idaho statute provides that the obligor parent is entitled to a credit but requires that the amount of the social security disability dependency payment received by the child be included in the obligor parent's income in calculating the basic child support obligation. *See* Idaho R. Civ. Pro. 6(c)(6) section 11. Similarly, the Supreme Court of Connecticut has held that benefit payments to the children should be included in the obligor parent's income for purposes of calculating the support award pursuant to the guidelines. *See Jenkins v. Jenkins,* 243 Conn. 584, 595, 704 A.2d 231, 236 (1998). The New Jersey and Michigan statutes, however, provide that social security disability dependency benefits received by the child on account of the obligor's disability are not to be treated as income to the obligor parent. *See* N.J. Child Support Guidelines, Appx. IXB; Michigan Child Support Formula Manual 5–6 (1998).

receipt of such payments constituted a change in circumstances entitling the obligor to a credit against his support obligation. That court more recently examined the availability of the credit following the adoption of presumptively correct child support guidelines. It stated: "The trial court's decision in *Guthmiller* was rendered before the effective date of the 1989 amendments ... making the scheduled child support under the guidelines the presumptively correct support obligation. Under the current guidelines it may or may not be appropriate to credit social security dependency payments toward the obligor's support obligation." *Mehl v. Mehl,* 545 N.W.2d 777, 780 (N.D.1996). *See also Austin v. Towne,* 560 N.W.2d 895, 898 (N.D.1997) (discussing availability of a credit following the adoption of the child support guidelines).

Similarly, the Supreme Court of Kansas in *Andler v. Andler,* 217 Kan. 538, 544, 538 P.2d 649, 654 (1975), held that a parent ordered to pay child support was entitled to a credit toward that obligation for social security disability dependency payments made to the child. The Court of Appeals of Kansas more recently examined the availability of a credit following the adoption of child support guidelines in *In re Marriage of Callaghan,* 19 Kan.App.2d 335, 869 P.2d 240 (1994). Addressing the noncustodial parent's contention that due to his children's receipt of social security disability dependency benefits, which were greater than his child support obligation, he was not required to pay child support, the court stated: "The husband's rationale is unfounded because the amount of his child support obligation is specifically determined by the formula within the child support guidelines. Moreover, the state guidelines, not the provisions of the Social Security Act, define the husband's child support obligation." *Id.* at 337, 869 P.2d at 242 (citation omitted). *See also Stultz,* 659 N.E.2d at 128–29 (recognizing impact of child support guidelines).

For these reasons and because the best interests of the child is of paramount importance in Maryland, we do not believe that an obligor parent should receive an automatic credit toward his or her child support obligation in an amount

equal to the benefit payments received by his or her minor child, who is entitled to the payments under federal law.

## V.

We hold that under the circumstances of this case, appellant was unable to show a material change in circumstances so that a court would have the discretion to modify his child support award. Assuming appellant were able to show a material change in circumstances, he would not be entitled to an automatic credit against his child support obligation for social security disability dependency benefits received by his son. The proper approach is to apply the child support guidelines and, if the application of the guidelines would be unjust or inappropriate, deviate from them as provided in section 12–202(b) of the Family Law Article.

**JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.**