535 A.2d 947

**Richard A. NEWKIRK**

v.

**Derek A. NEWKIRK.**

**No. 529, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

Jan. 13, 1988.

Allen J. Kruger (Kristen I. Schoeck and Goldman, Kruger, Koveland, Hurtt, Hollmann & Kaiser, on the brief) Laurel, for appellant.

Arnold P. Popkin, Suitland, for appellee.

Argued before WEANT, GARRITY, ROSALYN B. BELL, JJ.

GARRITY, Judge.

This matter involves a custodial contest between the divorced natural father of two teenagers and their adult half-brother who was asked by his mother, who is now deceased, to be the guardian of her minor children. The Circuit Court for Prince George's County found exceptional circumstances to exist and, in the best interest of the

children, awarded custody to their sibling. We shall not disturb the chancellor's ruling.

## Background

The appellant, Richard A. Newkirk, and Patricia C. Newkirk were married in 1969. At the time of their marriage, Patricia had two children from a prior marriage, Michael and Derek. Derek is the appellee in this case. Shortly after their marriage the appellant adopted Michael, then 15 years-of-age, and Derek, who was 13 years old. There were also two children born of this marriage who are the subject of this custody dispute: James, who is now 16, and Meghan, who is 13 years-of-age. The Newkirks were divorced in 1977, and Mrs. Newkirk was awarded custody of and support for the minor children.

On September 23, 1985, Patricia Newkirk died of cancer. In her Last Will and Testament, she requested that one of her two sons from her first marriage, Derek Newkirk, act as guardian of James and Meghan in the event of her death. On the day of Patricia Newkirk's death, the appellant (Mr. Newkirk) notified his children that they should pack as he was coming to pick them up. Derek, however, removed the children from the family home before Mr. Newkirk arrived. Mr. Newkirk then initiated custody proceedings.

Aggrieved by the master's recommendation that the father be awarded custody, Derek Newkirk filed exceptions and asked for child support arrearages which had been terminated by Mr. Newkirk from the time of Mrs. Newkirk's death. Upon hearing, the Circuit Court for Prince George's County (Levin, J.) sustained the appellee's exceptions and awarded custody of the children to Derek, who is now 29 years-of-age. In addition, the chancellor ordered the entry of judgment against the appellant for retroactive child support payments, which amounted to $4,100, and continued child support payments in the amount of $100 per week.

On appeal, the appellant asks us to review the following issues:

1. Whether the chancellor abused his discretion in awarding custody to a sibling of the minor children rather than to their surviving natural parent.
2. Whether the chancellor abused his discretion in admitting in evidence reports issued by Juvenile and Mental Hygiene Consulting Services.
3. Whether the chancellor abused his discretion in entering judgment for retroactive child support payments.

## I. Custody

Initially, it must be noted that when an appellate court reviews the factual findings of a chancellor in a child custody case, it may not substitute its judgment for that of the chancellor on findings of fact. It may only review whether those factual findings are clearly erroneous in light of the total evidence. Md.Rule 1086; *Colburn v. Colburn,* 15 Md.App. 503, 292 A.2d 121 (1972). If it appears to the reviewing court that the chancellor has erred as to matters of law, further proceedings in the trial court will ordinarily be required unless the error is determined to be harmless. *Christman v. O'Connor,* 36 Md.App. 263, 270, 373 A.2d 326 (1977). Finally, when an appellate court reviews the ultimate conclusion of the chancellor which has been founded upon sound legal principles and based upon factual findings that are not clearly erroneous, the chancellor's decision may be disturbed only if there has been a clear abuse of discretion. *Davis v. Davis,* 280 Md. 119, 125, 372 A.2d 231, *cert. denied,* 434 U.S. 939, 98 S.Ct. 430, 54 L.Ed.2d 299 (1977).

Our standard of review in custody cases was further explained by the Court of Appeals in *Ross v. Hoffman,* 280 Md. 172, 186, 372 A.2d 582 (1977):

The teaching of *Davis v. Davis, supra,* is plain. The ultimate conclusion as to the custody of a child is within the sound discretion of the chancellor. That conclusion is neither bound by the strictures of the clearly erroneous rule, that rule applying only to factual findings of the chancellor in reaching the conclusion, nor is it a matter of the best judgment of the reviewing court. It is not

enough that the appellate court find that the chancellor was merely mistaken in order to set aside the custody award. Rather, the appellate court must determine that the judicial discretion that the chancellor exercised was clearly abused. This is the principle which controls the review of any matter within the sound discretion of a trial court as distinguished from a judgment falling squarely within the ambit of the clearly erroneous rule.

Writing on behalf of the Court in *Hoffman,* Judge Orth emphasized that the settlement of child custody disputes between a biological parent and a third party, often a relative but not infrequently a foster parent, is governed by what is in the best interest of the particular child and most conducive to his or her welfare. *Id.* at 174–76, 372 A.2d 582.

As stated by the Court in *Dietrich v. Anderson,* 185 Md. 103, 117, 43 A.2d 186 (1945), a case also concerned with third party custody:

This policy of the law could hardly be expressed with more clarity or emphasis than in the case cited in *Kartman v. Kartman,* 163 Md. 19, 22, 161 A. 269 (1932), namely, *Re Petition of Frank B. Bort,* 25 Kan. 308, 37 Am.Rep. 255: *"When the custody of children is the question ... the best interest of the children is the paramount fact. Rights of father and mother sink into insignificance before that.* Even when father and mother are living together, a court has the power, if the best interests of the child require it, to take it away from both parents and commit the custody to a third person. In other words, a court of chancery stands as a guardian of all children and may interfere at any time and in any way to protect and advance their welfare and interests." (emphasis added).

Writing on behalf of the Court in *Hild v. Hild,* 221 Md. 349, 352, 157 A.2d 442 (1960), Judge Horney observed:

For the purpose of ascertaining what is likely to be in the best interests and welfare of the child the court may

properly consider, among other things, the fitness of the person seeking custody, the adaptability of the prospective custodian to the task, the age, sex and health of the child, the physical, spiritual and moral well-being of the child, the environment and surroundings in which the child will be reared, the influences likely to be exerted on the child, and, if he or she is old enough to make a rational choice, the preference of the child. (citations omitted). It stands to reason that the fitness of a person to have custody is of vital importance. The paramount consideration, however, is the general overall well-being of the child.

■■■ Although the "best interest of the child" standard prevails, in this State there is a *prima facie* presumption that a child's welfare is best served in the care and custody of its natural parents rather than a third party. This presumption is overcome, however, if the parent is unfit to have custody or if exceptional circumstances exist which would make such custody detrimental to the best interests of the child. Fam.Law Code Ann. (1984) § 5–201; *Ross v. Hoffman,* 280 Md. at 178–79, 372 A.2d 582.

■■■ In the case at bar, Chancellor Levin specifically found that exceptional circumstances existed to merit the granting of custody to the appellee, Derek Newkirk.

In an evaluation conducted by the circuit court's Mental Hygiene Consultation Service on behalf of the chancellor, Dr. Joseph G. Poirier, observed:

From the clinical vantage point, however, it is our opinion that it is in *the best interest* of these two youngsters to continue in the care and custody of their older brother. We would recommend that Mr. Newkirk be continued with the existing visitation access and we would recommend that the child support payments be reinstated retroactively.... It is our opinion that if out of necessity, the children had to be placed in the custody of their father, the situation would be workable, but that disposition is not the ideal disposition given the available

alternatives. These children are doing quite well under the current circumstances. They continued to mourn the death of mother, but in what appeared to be a healthy manner. The children are not desirous of living with their father, but they are receptive to continuing visitation.

We would determine no significant advantage whatsoever to have the children go and live with their father ...

Mr. Newkirk had revealed to Dr. Poirier that there had developed "a very distant, non-existent" relationship with Derek and his older adopted son, Michael Newkirk, and opined that, "The fault was primarily mine in not knowing how to relate to children as a father ..."

The chancellor further relied on investigative evaluations reported to him by the Department of Social Services and by the Juvenile Services Administration. They recommended that the children remain in the custody of their older brother. Their reports indicated that the children were emotionally well adjusted, of above average intelligence, and were continuing to excel in their school work. Their reports further indicated that the relationship between Derek and Meghan and James was excellent.

Ms. Linda Evans McClure of the Prince George's County Department of Social Services, when speaking of the relationship between Derek and his sister Meghan and brother James, testified that:

> Even though there isn't the distance in age that one might expect for a parent and child, he has taken over the parental role. It is clear that he runs that household. They respect and they follow his directions and they love him.

Miss McClure further testified that if the children were taken from their home and placed with their father, "there would be a lot of family turmoil and disruption in the regular routine of their lives because I think they would resist very strongly their placement with him if they were placed with him."

When interviewed by the chancellor in chambers, both Meghan and James expressed a desire to remain with their brother in the family home although they loved their father.

According to Dr. Gustave J. Weiland, a psychiatrist who testified on behalf of Mr. Newkirk, it was natural for the teenagers to prefer living with their older brother rather than with a parent who was not of the same generation and who would have more demanding standards and expectations of them. Dr. Weiland further opined that, "an important part of their motivation is that they understand that was their mother's wishes and that they feel strongly bound to try to follow their mother's wishes." He stated, however, that he believed it to be in the best interest and welfare of the children that Mr. Newkirk be awarded custody.

In explaining his ruling, the chancellor indicated that he was troubled by the estranged relationship that had developed between Mr. Newkirk's older children, who were of the ages of 13 and 15 when they were adopted by him, and was fearful of the same pattern developing. The chancellor declared that he was unwilling to take that risk. Based upon his discussions with the children, whom he deemed to be "exceptional," he determined that it would be in their best interest not to change the status quo.

It is clearly evident that the chancellor was mindful that the children had reached the "age of discretion" and accorded substantial weight to their desires to live with their older brother. Indeed, § 9–103 of Md.Fam.Law Code Ann. (1984) allows a child who has attained the age of 16 to petition the court for a change of custody. Likewise, Md. Est. & Trusts Code Ann. § 13–702 (1974) allows a minor who has attained the age of 14 to designate his or her guardian provided that the court finds the designee to be a proper custodian.

Under the totality of the circumstances, we are unable to conclude that the chancellor was clearly erroneous in his finding that exceptional circumstances existed or that the chancellor clearly abused his judicial discretion in awarding

the custody of James and Meghan to their brother, Derek Newkirk.

## II.  Admission of Reports

Mr. Newkirk avers that the chancellor erred in considering the evaluative reports submitted by the investigative teams as "the children never waived their respective privileges (of non-disclosure) nor were they advised of the existence thereof." We find no merit in this contention.

The investigative report provided by the Juvenile Services Administration clearly shows that it was conducted at the behest of the Honorable Ernest A. Loveless, the Chief Judge of the Seventh Judicial Circuit. Similarly, the report provided by Dr. Poirier of the Circuit Court's Mental Hygiene Consultation Service was requested by Domestic Relations Master David Rumsey. The evaluation was ostensibly ordered to aid the chancellor in ascertaining not only the emotional stability of the children but in evaluating the capacity of the custodial litigants to provide for, nurture, and maintain Meghan and James Newkirk. In any event, the issue was not raised below and has been waived. Md. Rule 1085.

## III.  Retroactive Support

As previously related, the chancellor ordered the appellant to continue paying child support of $100 per week and assessed arrearages at $4,100, for which amount judgment was entered. The appellant avers that the chancellor's decision regarding support was without basis in fact or in law.

It is undisputed that Mr. Newkirk fully abided by his obligation to provide for the support of his children during the eight years they were in their mother's custody. Following her death, however, Mr. Newkirk discontinued these payments on the advice of his attorney.

By previous court order, Mr. Newkirk was under a continuing obligation to provide for the support of his children

until such time as the order was modified. We shall affirm the judgment for arrearages.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.