766 A.2d 211

**Colleen Victoria O'BRIEN**

v.

**William Robert O'BRIEN.**

**No. 3017, Sept. Term, 1999.**

Court of Special Appeals of Maryland.

Feb. 2, 2001.

Louis Fireison (Elizabeth D. Horton and Louis Fireison & Associates, P.A., on the brief), Bethesda, for appellant.

William N. Porter (Charles E. Chlan & Assoc., LLC on the brief), Columbia, for appellee.

Argued Before HOLLANDER, DEBORAH S. EYLER, and MARVIN H. SMITH, (Ret'd, Specially Assigned), JJ.

DEBORAH S. EYLER, Judge.

The Circuit Court for Montgomery County denied a petition by Colleen Victoria O'Brien, appellant, for child support arrearages against her father, William Robert O'Brien, appellee, for support of Colleen's younger sister, and William's daughter, Fiona Katherine O'Brien. The circuit court rejected a domestic relations master's recommendation for an arrearages award in favor of Colleen and against William. On appeal, Colleen raises four questions for review, which we have combined, reordered, and rephrased:

I.    Did the circuit court err in ruling that Colleen lacked standing to seek arrearages against her father because she did not have legal custody or guardianship of Fiona?

II.   Did the circuit court err in ruling that an award of arrearages would be inequitable in the absence of proof that Colleen spent her own money to support Fiona?

III.  Did the circuit court err in denying Colleen's petition for arrearages in part because Fiona was receiving Social Security death benefits?

For the following reasons, we shall reverse the judgment of the circuit court and remand the case for further proceedings.

## FACTS AND PROCEEDINGS

On August 24, 1988, William and his wife Gabriele Borm O'Brien were divorced by judgment of the Circuit Court for Montgomery County. The O'Briens' marriage had produced three children: Molly, born April 30, 1972; Colleen, born June

1, 1973; and Fiona, born May 30, 1981. The Judgment of Absolute Divorce incorporated, but did not merge, a Marital Settlement Agreement in which William and Gabriele agreed to share legal custody of Molly and Colleen, with Molly to live with Gabriele and Colleen to live with William. The parties also agreed that Gabriele would have sole legal and physical custody of Fiona. The agreement specified that William was to pay Gabriele the sum of $250 per month for support of Fiona, until Fiona's death, marriage, attaining the age of majority, or becoming self-supporting.

On May 23, 1991, the circuit court granted a petition for modification filed by Gabriele and increased the amount of William's child support for Fiona to $514 per month, with the payments to be made by means of a wage withholding order, through the Child Support Enforcement Division ("CSED"). This amount was to include William's contribution toward private school tuition for Fiona.

On March 13, 1996, Gabriele died. At that time, Molly and Colleen were 23 and 22 years old, respectively, and Fiona was 14 years old.

About two weeks after Gabriele's death, on March 26, 1996, William wrote a letter to the CSED asking for an end to the wage withholding order, and providing a copy of Gabriele's death certificate. William's letter stated, "Since I will now be the sole supporter of [Fiona], my daughter, I request that the garnishment of my salary cease."

On April 29, 1996, the CSED filed a "Notice of Closing," signed by a legal assistant, stating that "ongoing child support is terminated effective [March 31, 1996]," that no arrearage was outstanding, that the case was "closed" on the division's computer system, and that "[William's] employer shall no longer deduct child support from his wages, effective immediately."

Almost three years later, on February 12, 1999, Colleen filed a motion to intervene. That motion was granted on March 29, 1999. That day, she filed a petition for custody, for modification of child support, and for other relief, pertaining to Fiona. She alleged, *inter alia,* that since their mother's

death, she had had physical custody of Fiona and had been the sole supporting adult in her life, and that William had not contributed to Fiona's support.

On November 21, 1999, Colleen's petition for modification went before a domestic relations master, in an evidentiary hearing. Thereafter, the master issued a report and recommendations, in which she made the following factual findings. At the time of Gabriele's death, Colleen was in her final semester of college, out of state. Colleen returned to Maryland and remained for about three weeks, to get " 'everything set up.' " Upon graduation, at the end of May 1996, Colleen moved back to Maryland permanently. Thereafter, she and Fiona, and for part of the time Molly, lived together. Colleen took responsibility for Fiona's day to day care and for paying her basic living expenses. She applied for Social Security death benefits for Fiona, and in late May or June, 1996, Fiona began receiving benefits of approximately $500 per month. From late spring 1996 until the master's hearing, Colleen used those benefits and her own earnings to pay for Fiona's living expenses. During that time frame, William did not make any cash contributions to Colleen for Fiona's support, and did not take any steps to obtain physical custody of Fiona. Colleen asked William to pay support for Fiona, but he refused.

The master further found that the Judgment of Absolute Divorce and the 1991 modification order required William and Gabriele to split the cost of Fiona's private school tuition. Fiona was enrolled in a private parochial school at the time of her mother's death. William immediately contacted the school and made arrangements to pay Fiona's full tuition, including a loan component, and other school expenses, such as book fees. From May 1996 through June 1999, William paid a total of $13,850 to the school (an average of $364.47 per month).

The master concluded that William's court ordered child support obligation for Fiona continued after Gabriele's death, and was not altered or modified by the "notice of closing" filed by the CSED. The master determined that William was in arrears for child support for Fiona from May 1996 through June 1999 (when Fiona turned 18). After crediting William

with $364.47 per month for his payments of school expenses for Fiona, the master calculated the child support arrearage for the applicable time period to be $5,682.14 ($149.53 × 38 months). The master found that some cash payments that William testified he had made to Fiona were gifts, and were not to be credited against the arrearage. Accordingly, the master recommended that a judgment for arrearages of $5,682.14 be entered against William and in favor of Colleen. She also recommended that William be ordered to pay $2,500 to Colleen as a contribution to her attorney's fees.

William filed exceptions to the master's report and recommendations. He argued: 1) that Colleen lacked standing to recover child support arrearages from him; 2) that arrearages could not be recovered for a period preceding the filing of Colleen's petition; 3) that the master erred in finding that Colleen was entitled to arrearages without also finding that she had "provided actual support of" Fiona; 4) that the master's recommendation to award arrearages was unfair and inequitable; and 5) the recommended award of fees was in error because it was not based on a consideration of the factors set forth in the Family Law Article.

Colleen filed an opposition to William's exceptions and filed cross exceptions based on the master's decision not to recommend an award of the full amount of her attorney's fees.

On January 7, 2000, the circuit court made an oral ruling sustaining William's exceptions. The court stated that the equities of the case did not warrant granting Colleen a judgment for arrearages and that the facts put before the master did not support her finding that Colleen had "spent any of her money on behalf of [Fiona]." The court explained that, while there was evidence that Colleen had spent some money for Fiona's support, the evidence also showed that Fiona's monthly Social Security death benefits exceeded the amount of William's support obligation.[1] The court added that it was not going to enter judgment in favor of Colleen for arrearages

---

1. The court found that that would be so even if William's income at that time, which was higher than what it had been in 1991, when his child support obligation had been modified upward, was taken into account.

when there was "no guarantee that Colleen [was] going to spend that money or has spent that money on the child." Finally, the court stated that it would issue its order without prejudice to Colleen's petitioning for appointment as guardian of Fiona and then seeking an award of arrearages. The court concluded by saying, "[O]bviously there was a court order outstanding and [William] had an obligation to pay, but I am not convinced that the child was in any way deprived because she was receiving those monies from Social Security benefits."

On February 11, 2000, the court issued an order sustaining William's exceptions. The order was docketed on February 18, 2000. Thereafter, Colleen noted a timely appeal.

Additional facts will be recited as pertinent to our discussion of the issues.

## DISCUSSION

Colleen contends that while the circuit court correctly recognized that William's obligation to pay child support survived Gabriele's death, it incorrectly denied her an award of arrearages on the ground that she lacked standing and it further erred in ruling that, even if she had standing, an award of arrearages was not equitable because 1) the evidence did not support the master's finding that she had spent any of her own funds to support Fiona, and 2) the amount of any arrearages would be entirely offset by the sums that Fiona had received as Social Security death benefits.

In response, William argues the burden was on Colleen to seek a guardianship or custody order for Fiona and to request a modification of the child support order directing payment to her, and that the court correctly ruled that, until she did so, she lacked standing to seek arrearages. William also maintains that the court correctly determined, in the alternative, that there was no evidence that Colleen had spent her own funds to support Fiona and that his child support payments were completely offset by Fiona's Social Security death benefits. He points out that he relied on the Child Support Enforcement Division's representation that he no longer was required to pay child support, and that the circuit court

properly ruled that it would be inequitable to award arrearages under the circumstances.

## I.

In *Newkirk v. Newkirk,* 73 Md.App. 588, 535 A.2d 947 (1988), we held that a non-custodial parent's obligation to pay child support did not terminate upon the death of the custodial parent. In that case, upon divorce, the mother of two children was awarded custody and the father was ordered to pay child support. Several years later, when the mother was dying of cancer, she executed a last will and testament appointing her adult son from a prior marriage as guardian of the children upon her death. After the mother died, the adult son took custody of the children and the father ceased paying child support. The father then petitioned for custody. The adult son cross-petitioned for custody and sought an award of child support arrearages.

The circuit court granted custody to the adult son and awarded arrearages to him for the period beginning with the death of the mother. We affirmed on appeal. In so doing, we made plain that the father's court-ordered obligation to pay child support for his minor children did not cease upon their mother's death. *See also Abrams v. Connolly,* 781 P.2d 651 (Colo.1989) (noncustodial parent's obligation to pay child support, pursuant to written agreement incorporated into divorce decree, did not terminate upon death of custodial parent, even though agreement did not specify who was to receive payments thereafter); *McCann v. McCann,* 27 Cal.App.4th 102, 32 Cal.Rptr.2d 639 (1994) (child support order does not automatically terminate upon death of custodial parent; even if noncustodial parent assumes custody, he must request judicial termination of order if order does not so provide). *See also* Md.Code (1999 Repl.Vol.) § 5–203 of the Family Law Article (FL)(parents are joint natural guardians of their minor children and are jointly and severally responsible for their support, care, nurture, welfare, and education).

There is no case in Maryland discussing whether and under what circumstances a third party who has physical custody of

a child, but does not have legal custody and is not the child's legal guardian, has standing to seek and recover child support arrearages from the non-custodial parent.[2]   In *Newkirk,* the issue was not raised, most likely because the father assumed that the mother's testamentary designation of her adult son as guardian of the children conferred guardianship status upon him.   In fact, that was not the case.   When one parent dies, the surviving parent becomes the sole natural guardian of the parents' minor child.   FL § 5–203(a)(2)(i).   A "surviving parent" of an unmarried minor child may make a testamentary appointment of a guardian of the person of that child, unless prohibited by court order or by agreement from doing so. Md.Code (1991 Repl.Vol.), § 13–701 of the Estates and Trusts Article.   Conversely, and in accordance with FL § 5–203(a)(2)(i), a parent who is not the surviving parent cannot appoint by will a guardian of the person of his or her child; rather, upon the death of that parent, the other parent becomes the child's sole guardian.   Thus, in *Newkirk,* notwithstanding the testamentary guardianship appointment, the father became the sole natural guardian of the children upon their mother's death.

In *Saask v. Yandell,* 702 P.2d 1327 (Alaska 1985), the Supreme Court of Alaska addressed a question of third party

---

2.   In two very old Court of Appeals cases involving the subsequently repealed bastardy statute, the Court expressed the view that a father's obligation of support under that statute would not cease upon the death of the mother and that a third party with physical custody would have standing to seek arrearages.   In *Robinson v. State,* 68 Md. 617, 618–19, 13 A. 378 (1888), the Court observed:

Suppose the mother had died, ... leaving the child with some third person, who had maintained [the child]; in such case, there could be no possible reason for exonerating the father from his liability, created by statute, for the maintenance of the child, in the mode provided....  [A]ny person maintaining the child, ... has a right to proceed by *scire facias,* in the name of the State, to collect the amount due from the father and his sureties, for the maintenance of the child.

Likewise, the Court in *State v. Hardesty,* 132 Md. 172, 176, 103 A. 461 (1918), citing *Robinson,* stated: "The bond into which the father enters is in terms for the benefit of any person by whom the child is being maintained,...."

standing to seek child support arrearages. In that case, the child continued to live with his stepfather after his mother and stepfather divorced. The stepfather did not have legal custody or guardianship of the child. He brought suit against the child's father for child support arrearages, under the Uniform Reciprocal Enforcement of Support Act ("URESA"). The father argued that the stepfather lacked standing to sue for arrearages because he was not the child's legal guardian. The Alaska court held that a person who supports and has physical custody of a child has standing to sue for child support arrearages under URESA. *See also McMullen v. Muir,* 34 Ohio App.3d 241, 517 N.E.2d 1381 (1986)(grandmother who, with child's parent's consent, had *de facto* custody of child had standing to sue the parent for financial support or reimbursement).

In the case *sub judice,* the evidence showed that after Gabriele's death, William did not attempt to take physical custody of Fiona. Instead, he acquiesced in Colleen's taking Fiona into her physical custody and assuming in loco parentis status. As an older sister, Colleen had no legal duty to care for or support Fiona; that duty rested squarely on William, Fiona's surviving parent. *Drummond v. State ex rel. Drummond,* 350 Md. 502, 513, 714 A.2d 163 (1998) ("It is the parents with whom lies the legal duty to support their child.") Nevertheless, with William's knowledge and tacit approval, Colleen acted as Fiona's parent by undertaking the parental role and fulfilling the duties of a parent. *See Pope v. State,* 284 Md. 309, 323, 396 A.2d 1054 (1979)(explaining that one acts in loco parentis by intentionally " 'put[ting] himself in the situation of a lawful parent by assuming the obligations incident to the parental relation without going through the formalities necessary to legal adoption. [In loco parentis status] embodies the two ideas of assuming the parental status and discharging the parental duties.' " (quoting *Niewiadomski v. United States,* 159 F.2d 683, 686 (6th Cir.), *cert. denied,* 331 U.S. 850, 67 S.Ct. 1730, 91 L.Ed. 1859 (1947)) (citing *Von der Horst v. Von der Horst,* 88 Md. 127, 130–31, 41 A. 124 (1898)).

Notwithstanding that Colleen was a third party (i.e., not a natural parent of Fiona) who had not been granted legal custody or guardianship, her in loco parentis status was sufficient to give her standing to sue William for child support arrearages for Fiona. To conclude otherwise would run contrary to the guiding principle in all Maryland child custody and support cases: the best interests of the child. *Giffin v. Crane*, 351 Md. 133, 716 A.2d 1029 (1998); *Ross v. Hoffman*, 280 Md. 172, 174–76, 372 A.2d 582 (1977); *Geramifar v. Geramifar*, 113 Md.App. 495, 502–03, 688 A.2d 475 (1997). Limiting the ability of a third party who, with the knowledge and acquiescence of a child's parent, is functioning as the child's parent, to seek and obtain arrearages by requiring that he or she first obtain a custody or guardianship order would be detrimental to the child's interests.[3]

The evidence in this case established that during the time frame at issue, Fiona had been in Colleen's physical custody and Colleen had functioned as her parent, all with the knowledge and passive acceptance of William, Fiona's surviving parent. Accordingly, the circuit court erred in ruling that Colleen did not have standing to sue William for child support arrearages for Fiona without first obtaining an order of custody or guardianship.[4]

---

3. As if to set about showing just how detrimental such a requirement would be, William also argues, citing FL § 12–101(a)(3), that even if Colleen had obtained a custody or guardianship order, she only would have been able to recover arrearages from him for the time commencing on the date on which she filed her petition; thus, arrearages for the years preceding the filing of her petition would not have been recoverable, even though William had a legal obligation to pay. In fact, FL § 12–101(a)(3) does not operate as William argues. That statute provides that for any "pleading [other than an initial pleading or one requesting pendente lite support] that requests child support," the court may award support only back to the date of filing of the petition. A petition for arrearages is not a pleading requesting an award of child support. It is a request that the court enforce an already existing order of support.

4. We note, also, that by the time of the court's ruling, it would have been impossible for Colleen to obtain either such order, because Fiona

## II. and III.

We shall discuss the second and third questions presented together because they are interrelated.

The circuit court seemed to think that there was no evidence before the master that Colleen had spent any of her own money to support Fiona. The court seized upon the absence of such evidence, and the evidence that Fiona had been receiving monthly Social Security death benefits in an amount that exceeded William's monthly support obligation, to conclude that an award of arrearages would be "inequitable."

We note once again that the law is clear that William's duty to abide by the court's order of support did not terminate upon Gabriele's death. William had no right to unilaterally stop paying child support, and unless and until he filed and was granted a motion for modification of the support order, based on a material change in circumstances, *see* FL § 12–104(a), he was bound to make the payments at the times and in the amounts specified by the existing court order. The notice filed by the CSED had no effect whatsoever on this court-ordered obligation.

A circuit court may not retroactively modify a child support award for a time period prior to the filing of a motion for modification. FL § 12–104(b). Because William never moved for modification of his child support obligation for Fiona, the court could not modify his obligation. Thus, the only issues that were before the circuit court on Colleen's petition for arrearages were 1) the proper amount of arrearages, i.e., whether William already had paid all or part of the obligation; and 2) whether Colleen was the proper person to be awarded the arrearages.

---

already had reached the age of majority. FL § 5–307(b); Md.Code (1957, 1998 Repl.Vol.) Art. 1, § 24; *Corry v. O'Neill,* 105 Md.App. 112, 658 A.2d 1155 (1995) (stating that the court's jurisdiction over the protection of the child's best interests extends only during the child's minority).

The Social Security death benefits that Fiona was receiving were not relevant to the issue of the amount of arrearages owed by William. If William had moved the court for modification, Fiona's receipt of Social Security death benefits would have been a factor the court could have considered in deciding the motion. *See Drummond v. State ex rel. Drummond, supra,* 350 Md. 502, 714 A.2d 163 (holding that ordinarily, child's receipt of Social Security disability dependency benefits would not constitute a material change in circumstances; when there has been a material change in circumstances, however, circuit court may consider the benefits in deciding whether to deviate from the guidelines, under FL § 12–202(a)).[5] The death benefits had no bearing, however, on the amount of arrearages owed. For that reason, the court erred in taking into consideration Fiona's receipt of Social Security death benefits in deciding the issue of arrearages. Likewise, whether Colleen spent her own money to support Fiona was irrelevant to the issue of the amount of arrearages owed by William.

With respect to the second question—whether Colleen was the proper person to be awarded arrearages—the circuit court based its ruling against Colleen primarily on its conclusion that the master's finding that Colleen had spent money of her own, over and above the Social Security death benefits, to support Fiona, was clearly erroneous. That finding by the court was itself in error. Colleen testified at length and in

---

5. We hasten to point out that Social Security death benefits received by a child as a result of the death of a parent are "intended to provide [the child] some of the support that [the child] otherwise would have received from [that parent] if [the parent] had not died." *Abrams v. Connolly, supra,* 781 P.2d at 654 n. 1 (commenting that a father's assignment of child's Social Security death benefits to third party guardian of child "was not a valid substitute for his child support obligation ... and did not relieve him of that obligation"). A child receiving Social Security death benefits necessarily has lost the benefit formerly derived from the deceased parent's income. To the extent that Social Security death benefits for the child replace some of the lost parental income, the receipt of benefits would seem to make less material the change in circumstances (i.e., loss of parental income) occasioned by the parent's death.

detail about the sums of money that she spent monthly, beginning in May 1996, for food, utilities, transportation, gasoline, clothing, incidentals, vacations, and allowance for Fiona. Indeed, Colleen's testimony in this regard was uncontroverted. The sums that Colleen spent for Fiona on a monthly basis far exceeded the monthly income that Fiona received from Social Security. The master's first level factual findings regarding Colleen's payments on behalf of Fiona were well supported by the evidence, and the circuit court erred in not giving them deference. *Domingues v. Johnson*, 323 Md. 486, 493–96, 593 A.2d 1133 (1991).

As Colleen put it, during the period of time that William should have been paying child support, but was not, she was the "only living human being supporting" Fiona. Colleen's testimony about the payments she made for Fiona, both from her own income and from the Social Security death benefits, together with her testimony explaining that Fiona was in her physical custody during that time, established not only that she was a proper person to receive the arrearages but also that she was the only person who properly could receive them. To the extent that the circuit court concluded that Colleen had no legal basis to obtain arrearages, its decision was legally incorrect. To the extent that the court exercised its discretion to deny Colleen's petition for arrearages, we conclude that it did so arbitrarily and without a sound basis in fact.[6]

**JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEE.**

---

6. On remand, the circuit court should address the master's recommended award of attorney's fees, and William's exception thereto. The circuit court sustained that exception, without discussion, apparently because it sustained the exceptions to the recommendations on the merits.