*Prince George's County Office of Child Support Enforcement ex rel. Lashaun Polly (Deceased) v. Douglas Brown*, No. 2417, September Term 2016. Opinion by Thieme, Raymond G., Jr., J. (Senior Judge, Specially Assigned).

**CHILD SUPPORT PAYMENTS -- CHILD SUPPORT PAYMENTS MAY BE RELEASED TO PERSON CARING FOR CHILDREN AFTER CUSTODIAL PARENT DIES.** The circuit court erred as a matter of law when it ruled that it had no authority to release escrowed child support payments to the children's maternal grandmother, who took care of the children following the death of their mother. Even though the grandmother was not the original payee on the child support order, a non-custodial parent remains under a continuing obligation to provide for the support of his children until such time as the order is modified.

**CHILD SUPPORT ARREARAGES – CHILD SUPPORT ARREARAGES MAY NOT BE ELIMINATED BECAUSE THE CUSTODIAL PARENT DIED.** The circuit court erred as a matter of law when it eliminated father's child support arrearages upon the death of the custodial mother. *See* Md. Code Ann., Family Law § 12-104(b)(prohibiting a court from retroactively modifying a child support award prior to the date of a motion for modification) and *Harvey v. Marshall*, 389 Md. 243, 272 (2005)(holding that the above statute prevents a court from eliminating child support arrearages prior to the date of a motion for modification).

Circuit Court for Prince George's County
Case No. CAS98-22721

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2417

September Term, 2016

_____

PRINCE GEORGE'S COUNTY OFFICE OF
CHILD SUPPORT ENFORCEMENT EX REL.
LASHAUN POLLY (DECEASED)

v.

DOUGLAS BROWN
_____

Eyler, Deborah S.,
Shaw Geter,
Thieme, Raymond G., Jr.
   (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Thieme, J.
_____

Filed:  April 5, 2018

The Circuit Court for Prince George's County issued an order that, among other things, eliminated the child support arrearages Douglas Brown had accrued, and released to him child support payments that the Prince George's County Office of Child Support Enforcement had held in escrow for the almost two years his children lived with their maternal grandmother. The Office appeals, essentially asking the following questions[1]:

1. Did the circuit court err as a matter of law when it ruled that it lacked the legal authority to release the escrowed child support payments to the children's maternal grandmother because she was not the original payee on the child support order?

2. Did the circuit court err as a matter of law when it eliminated Brown's child support arrearages?

We answer both questions in the affirmative. Therefore, we shall reverse and remand for further proceedings consistent with this opinion.

---

[1] The Office specifically raised the following three questions on appeal:

1. Did the circuit court err when it abdicated its responsibility to exercise independent legal judgment and instead deferred to the magistrate's recommendation?

2. Did the circuit court err as a matter of law in finding that it lacked the authority to release child support payments to Willie Mae?

3. Did the circuit court err as a matter of law when it waived Mr. Brown's child support arrearage despite the prohibition against retroactive modification contained in § 12-104(b) of the Family Law Article?

**FACTS**

On February 14, 1997, Jada was born to Lashaun Polly and Douglas Brown. The following year, the Prince George's County Office of Child Support Enforcement (the "Office"), filed a complaint against Brown for child support on Polly's behalf. The Circuit Court for Prince George's County found in favor of Polly and ordered Brown to pay $432 per month in child support, through the Office, beginning June 1, 1999.

On April 3, 2004, a second child, Sonee, was born to Polly and Brown. In 2011, the Office filed a motion to establish paternity and a motion to modify child support to include Sonee. On October 13, 2011, the circuit court declared Brown to be Sonee's father and ordered Brown to pay $818 per month in child support for both children, through the Office, beginning July 1, 2011. Finding that Brown was $1,518.01 in arrears, the court also ordered him to pay $25 per month toward the balance.

On September 8, 2014, Polly died. Jada was 17 years old; Sonee was 10. Willie Mae Polly, the children's maternal grandmother began caring for the children. On December 14, 2014, the Office began holding in escrow Brown's child support payments because there was no order authorizing the Office to release the payments to the grandmother. On April 12, 2016, the Office filed a motion to intervene on behalf of the grandmother in the child support case, seeking an order authorizing it to disburse the

payments it held in escrow to the grandmother because Sonee lived with her.[2] At that time, Brown owed $15,557.77 in arrearages.

About three months later, in July 2016, the circuit court awarded custody of Sonee to Brown, to start on August 14, 2016; the grandmother was given reasonable visitation. On August 1, 2016, Brown filed a motion asking the circuit court to terminate his on-going child support obligation, eliminate his arrearages, and order the Office to release the escrowed child support payments to him because Sonee would soon be living with him pursuant to the custody order.

On August 25, 2016, a magistrate held a hearing on the Office's motion to intervene. Although the Office agreed with Brown that his on-going child support obligation should be terminated, the Office sought an order authorizing it to release the money it held in escrow, $5,029.77, to the grandmother. The escrowed money was child support payments Brown had made from December 14, 2014, when the Office began holding Brown's child support payments in escrow, until August 2016, when Sonee began living with Brown. Brown argued that the grandmother was not entitled to the escrowed funds because it was offset by the Social Security death benefits around $1,100 per month that she received on behalf of the children following Polly's death.

---

[2] Even though Jada turned 18 on February 14, 2015, her emancipation did not automatically end Brown's child support obligation. *See Quarles v. Quarles*, 62 Md. App. 394, 403(1985)(although a father may not be compelled to pay child support for an emancipated child, "a father may not unilaterally reduce his [child] support payments" when an older child emancipates and "must pay the full amount of the award until the younger child attains majority or until the amount is modified by the court.").

The magistrate sympathized with the grandmother. However, the magistrate did not believe that she had the legal authority to release the escrowed funds to the grandmother, stating:

> You know, Counsel, I agree with you that she was taking care of the children, but I have – there's no legal authority for me to give her that money. There's nothing, you know, ordering – and he does have a moral obligation to support. But he needs to do that on his own. There was no motion or no grant of support or even a change in payee was not entered in this case prior to recently. So I can't – you know, I have no legal authority, ma'am, unfortunately, to just give you this money[.]

The magistrate recommended, in a written proposed order, that the circuit court: order the Office to release the money held in escrow to Brown; terminate Brown's ongoing obligation to pay child support; and eliminate Brown's arrearages in their entirety. The Office filed exceptions to the magistrate's recommendation.

At the subsequent exceptions hearing before the circuit court, the Office argued that the magistrate had erred in believing that she had no legal authority to release the escrowed money to the grandmother. The court, like the magistrate, also disagreed with the Office's position, stating:

> But she voluntarily kept the children, so how can she now say that she's entitled to that?
>
> I understand, you know, from an equitable standpoint it's reasonable, but from a legal standpoint, considering the rule of law, I don't know what law to point to that says when a person takes it upon themselves to voluntarily accept the responsibility of a child, in this case her grandchildren, that she's entitled to be paid for the expenses she's incurred doing something she freely did.

* * *

> I just can't say that [the magistrate] erred. I don't feel comfortable. If you had case law that was on point and I could say, okay, yeah, I see your position, but without the rule of law, I don't – I can't find that what she – what her decision was, was in error. That's the problem I'm having.

On December 27, 2016, the circuit court entered a written order: dismissing the Office's motion to intervene as moot; directing the Office to release the escrowed money to Brown; terminating Brown's obligation to pay child support, and eliminating Brown's child support arrearages.

The Office filed a timely notice of appeal and a motion to stay the proceedings in circuit court pending appeal, which the circuit court granted.

## DISCUSSION

Because these proceedings contain three layers (magistrate, circuit court, and appellate court), we shall first set forth the appropriate standard of review.

### 1. Standard of review

A magistrate assesses the credibility of the testifying witnesses and, after establishing a factual record, draws conclusions from the facts to make recommendations. *Levitt v. Levitt*, 79 Md. App. 394, 399 (1989). A circuit court shall defer to the magistrate's fact-finding where it is supported by credible evidence, and it is not, therefore, clearly erroneous. *Kierein v. Kierein*, 115 Md. App. 448, 453 (1997) (quotation and citation omitted). *See also Best v. Best*, 93 Md. App. 644, 651 (1992)(a trial court should defer to the fact-finding of a magistrate where the fact finding is not clearly erroneous). A trial court, however, should exercise its independent judgment in applying the facts to the ultimate disposition because "[a] given set of facts does not lead mechanically to a single,

5

automatic disposition but may support a range of discretionary dispositions." *Wenger v. Wenger*, 42 Md. App. 596, 602 (1979). *See also Leineweber v. Lieneweber*, 220 Md. App. 50, 60–61 (2014)(when a magistrate submits a proposed order to the circuit court and exceptions are made to the master's recommendation, the circuit court must engage in independent consideration of the exceptions) (citation omitted).

We give "due regard" to a lower court's fact finding, and we will not set aside those findings unless they are clearly erroneous. *Clickner v. Magothy River*, 424 Md. 253, 266 (2012) (citation omitted). Questions of law, however, are subject to *de novo* review. *Harvey v. Marshall*, 389 Md. 243, 257 (2005). *See also Flanagan v. Flanagan*, 181 Md. App. 492, 521 (2008)(appellate courts review questions of law under a *de novo* standard.). In sum, "[w]hen the trial court's decision involves an interpretation and application of Maryland statutory and case law, our Court must determine whether the lower court's conclusions are legally correct." *Clickner*, 424 Md. at 266 (quotation marks and citations omitted). Here, there is no factual dispute between the parties and the questions raised on appeal concern only the circuit court's legal authority.

## 2. Escrowed monies

The Office argues that the circuit court erred as a matter of law when it concluded that it had no legal authority to release the escrowed monies to the grandmother. The Office cites *O'Brien v. O'Brien*, 136 Md. App. 497 (2001), *rev'd on procedural grounds*, 367 Md. 547 (2002) in support of its argument. The Office is correct.

Generally, a parent owes the obligation of financial support "to the child, not to the other parent[.]" *Knott v. Knott*, 146 Md. App. 232, 247 (2002). Moreover, a parent's

6

obligation to pay support does not cease with the custodial parent's death. *Newkirk v. Newkirk*, 73 Md. App. 588, 596-97 (1988). On the contrary, the non-custodial parent remains "under a continuing obligation to provide for the support of his children until such time as the order [i]s modified." *Id*.

In *O'Brien*, *supra*, an adult child, Colleen, filed a motion to intervene in her parent's child support case following the death of her mother. Colleen had cared for her minor sister, Fiona, since their mother's death three years earlier. Colleen sought custody of Fiona, a modification of child support, and arrearages from their father, who had not paid any support since their mother's death. The circuit court agreed with the father's argument that Colleen did not have standing to recover child support arrearages, and that even if she had standing it would not award arrearages to her because the amount of arrearages would be offset by the Social Security death benefits that Fiona had received. Colleen appealed and we reversed. We determined that even though Colleen was not a natural parent and had not been granted legal custody or guardianship, "her in *loco parentis* status was sufficient to give her standing to sue [her father] for child support" because "[t]o conclude otherwise would run contrary to the guiding principle in all Maryland child custody and support cases: the best interests of the child." 136 Md. App. at 508 (citations omitted). We further stated that "[t]o the extent that the circuit court concluded that Colleen had no legal

basis to obtain arrearages, its decision was legally incorrect."[3] *Id*. at 511.

The reasoning and holding in *O'Brien*, *supra*, is directly on point. Here, the circuit court could have released the escrowed child support payments to the grandmother because she, like Colleen in *O'Brien*, had provided care for the children following the death of their mother. However, the circuit court, like the magistrate, erroneously believed that it could not release the escrowed money to the grandmother because she had no legal authority over the children. We agree with the Office that the circuit court's failure to recognize its authority and then to exercise its discretion in the context of that authority constituted reversible error.[4]

### 3. Arrearages

The Office argues that the circuit court erred as a matter of law when it eliminated Brown's child support arrearages. The Office cites *Harvey v. Marshall*, 389 Md. 243 (2005) in support of its argument. The Office is again correct.

---

[3] The holding in *O'Brien* is congruent with the wording in Md. Code Ann., Family Law ("FL") Art., §5-1034(a), which provides in the context of paternity proceedings that "[t]he court may direct that any payment ordered under this subtitle be made to the mother or *any other person.*" (Emphasis added).

[4] We note that, contrary to Brown's argument below, the fact that the grandmother received the children's Social Security death benefits does not automatically result in a credit against a child support obligation. *See Drummond v. State ex rel. Drummond*, 350 Md. 502, 520-27 & n.5 (1998)("To relieve a parent entirely of his or her support obligation because the child receives a benefit to which he or she is entitled from some other source would not ordinarily be consistent with th[e] fundamental principle of family law" that a parent has a duty to support his children.) *Id*. at 520. *See also O'Brien*, 136 Md. App. at 510 ("The Social Security death benefits that [the child] was receiving were not relevant to the issue of the amount of arrearages owed" by father and therefore, the lower "court erred in taking into consideration [the child's] receipt of Social Security death benefits in deciding the issue of arrearages.").

As stated above, Brown's obligation to financially support his children did not end on Polly's death. *Newkirk*, *supra.* FL § 12-104(b) provides that a "court may not retroactively modify a child support award prior to the date of the filing of the motion for modification." In *Harvey*, *supra*, the Court of Appeals held that the above statutory provision against retroactive modification also prevents a court from eliminating a child support arrearage. 389 Md. at 272.

Brown filed his motion to modify his child support obligation on August 1, 2016. As of April 2016, Brown owed arrearages in the amount of $15,557.77. Under FL § 12-104(b) and the holding of *Harvey*, the circuit court erred as a matter of law in eliminating Brown's arrearages that he had accumulated prior to his motion to modify.[5]

**JUDGMENT REVERSED.**

**CASE REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.**

---

[5] It appears that Polly was required to initiate child support proceedings and assign her children's child support rights to the State as a condition to receiving welfare assistance. The requirement of a welfare recipient to assign his or her right to receive child support to the State as a condition of receiving welfare assistance is imposed by statue. *See* Md. Code Ann., Human Services ("HS") Art., § 5-308 (setting forth conditions to participate in the family investment program). When a person owing child support under such circumstances accumulates unpaid arrearages, the Child Support Enforcement Agency ("CSEA") has discretionary statutory authority to settle with the obligor for an amount less than the full arrearages. *See* FL § 10-112. Should Brown seek to eliminate/reduce his arrearages, he must petition the CSEA. We review those administrative decisions on appeal under the arbitrary and capricious standard. *See Harvey*, 389 Md. at 295-96.